**Barbara Jean DAVIS, Appellant**

v.

**The STATE of Texas, State.**

**No. 2–02–149–CR.**

Court of Appeals of Texas, Fort Worth.

Aug. 5, 2004.

---

2. *See Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 701 (1966).

Bill Lane and Scott Brown, Fort Worth, for appellant.

Tim Curry, Criminal District Attorney, Charles M. Mallin, Ben Leonard and Betty Arvin, Assistant Criminal District Attorneys, Fort Worth, for the State.

PANEL B: LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

**OPINION ON REHEARING**

TERRIE LIVINGSTON, Justice.

The State has filed a motion for rehearing primarily seeking an affirmance based on the court of criminal appeals's June 23, 2004 opinion in *Swearingen v. State*, which clarified the standard to use in reviewing the grant or denial of a motion to suppress based on a warrant. No. 110–03, 2004 WL 1393813, at \*3, 143 S.W.3d 808, 810–11 (Tex.Crim.App. June 23, 2004). We have reviewed our opinion in light of this holding and have re-written applicable portions of our opinion to apply *Swearingen*. We do, however, deny the State's motion for rehearing, withdraw our June 17, 2004 opinion, and substitute the following in its place.

Appellant, Barbara Jean Davis, entered an open plea of guilty to possession of four grams or more but less than two hundred grams of a controlled substance, one count of a three count indictment. Prior to entry of her plea, she filed a motion to suppress illegally obtained evidence along with a request for a *Franks* hearing. *See Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). After a hearing on both, the trial court denied her motion to suppress and she entered her plea, reserving her right to appeal the trial court's denial of her motion to suppress.[1] The trial court later sentenced her to two years' deferred adjudication community supervision and she timely appealed. We reverse and remand.

**Issues on Appeal**

In one point, appellant complains that the trial court erred when it denied her

---

1. Judge C.C. "Kit" Cooke was assigned to Tarrant County Criminal District Court Number Three and heard the pretrial motions and presided at the trial.

motion to suppress evidence obtained from an illegal search of her residence. She contends that the search and arrest warrant affidavit prepared by Officer John Wallace of the North Richland Hills Police Department fails to demonstrate, within its four corners, probable cause sufficient to justify the issuance of the warrant. *See* Tex.Code Crim. Proc. Ann. art. 18.01(b) (Vernon Supp.2004).

Further, appellant contends that she offered sufficient evidence at the *Franks* hearing of several false statements in the affidavit that were made by Officer Wallace knowingly and intentionally, or with reckless disregard for their truth. Because of these false statements, she contends that the warrant should be voided and any evidence obtained under it suppressed under *Franks.* 438 U.S. at 155–56, 98 S.Ct. at 2676 (holding evidence inadmissible if seized under an affidavit that knowingly or recklessly contains a false statement material to the issue of probable cause and the remainder of the warrant, without the false statement, is insufficient to establish probable cause).

**Review of the Trial Court Ruling on the Probable Cause Affidavit**

■ After we handed down our original opinion in this case, the court of criminal appeals issued its opinion in *Swearingen v. State,* which requires us to apply a deferential standard of review when reviewing the propriety of a search with a warrant. The State, in its motion for rehearing, has asked us to modify our opinion in light of the new rule announced in *Swearingen.* Because the *Swearingen* opinion has not yet been released for publication, we will discuss its application to this case, but also include our previous analysis under *Johnson, Carmouche,* and *Guzman* (applying an abuse of discretion standard, giving almost total deference to the trial court's determination of historical fact, but then reviewing the trial court's application of the law de novo). *Johnson v. State,* 68 S.W.3d 644, 652–53 (Tex.Crim.App.2002); *Carmouche v. State,* 10 S.W.3d 323, 327 (Tex.Crim.App.2000); *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997).

In *Swearingen,* the court of criminal appeals tried to clarify or create a distinction between the standards of review we should use when reviewing warrantless searches and searches pursuant to a warrant. 2004 WL 1393813, at *1, 143 S.W.3d at 808. It also resolved the perceived split among three intermediate courts of appeals's standards for reviewing a magistrate's determination that probable cause existed to issue a search warrant: *Ramos v. State,* 31 S.W.3d 762 (Tex.App.-Houston [1st Dist.] 2000, no pet.); *Daniels v. State,* 999 S.W.2d 52 (Tex.App.-Houston [14th Dist.] 1999, no pet.); *State v. Bradley,* 966 S.W.2d 871 (Tex.App.-Austin 1998, no pet.).[2] In accordance with *Swearingen,* we apply the exception to the *Guzman* rule. 2004 WL 1393813, at *3, 143 S.W.3d at 810–11. We are to use the deferential standard articulated in *Gates* and *Johnson. Id.* at *2–3, 143 S.W.3d at 809–10 (citing *Illinois v. Gates,* 462 U.S. 213, 234–37, 103 S.Ct. 2317, 2330–32, 76 L.Ed.2d 527 (1983); *Johnson v. State,* 803 S.W.2d 272, 289 (Tex.Crim.App.1990), *overruled on other grounds by Heitman v. State,* 815 S.W.2d 681, 685 n. 6 (Tex.Crim.App.1991)).

■ Under these standards we look to the "totality of the circumstances" regard-

---

2. Since *Guzman* was issued in 1997, this court has used a deferential abuse of discretion standard of review. We give almost total deference to a trial court's or magistrate's determination of facts but review the trial court's application of law to the facts de novo. *Johnson,* 68 S.W.3d at 652–53; *Carmouche,* 10 S.W.3d at 327; *Guzman,* 955 S.W.2d at 89.

ing the information contained in the affidavit. *Johnson,* 803 S.W.2d at 289. We give great deference to the magistrate's determination in whether the affidavit reflects a "substantial basis" for concluding that a search would uncover evidence of a crime. *Gates,* 462 U.S. at 236, 103 S.Ct. at 2331.

 Regardless, our review is limited to examining the four corners of the affidavit to determine whether probable cause exists. U.S. CONST. amend. IV; TEX. CONST. art. I, § 9; TEX.CODE CRIM. PROC. ANN. art. 18.01(b); *Jones v. State,* 833 S.W.2d 118, 123 (Tex.Crim.App.1992), *cert. denied,* 507 U.S. 921, 113 S.Ct. 1285, 122 L.Ed.2d 678 (1993); *cf. Cates v. State,* 120 S.W.3d 352, 355 n. 3 (Tex.Crim.App.2003) (setting forth the distinction between a suppression hearing and a *Franks* hearing where additional evidence may be admitted to show the falsity of assertions within an affidavit). In this review, we are to determine whether there is a fair probability, not an actual showing, that contraband or evidence of a crime will be found in a particular place in light of the totality of the facts set forth in the affidavit. *See Gates,* 462 U.S. at 239, 103 S.Ct. at 2332; *Hennessy v. State,* 660 S.W.2d 87, 89 (Tex. Crim.App. [Panel Op.] 1983) (holding that the informant's basis of knowledge, or reliability, along with his veracity, or credibility, are relevant considerations in the totality of the circumstances, citing *Gates*). The officer's affidavit must provide the magistrate with a substantial basis for concluding that a search would uncover evidence of wrongdoing. *Gates,* 462 U.S. at 236, 103 S.Ct. at 2331; *Swearingen,* 2004 WL 1393813, at *2, 143 S.W.3d at 809–10. The informant's reliability or basis of knowledge is relevant in determining the value of his assertions. *Gates,* 462 U.S. at

230, 103 S.Ct. at 2328. Corroboration of the details of an informant's tip through independent police investigation can also be relevant in the magistrate's determination of probable cause. *Id.* at 241–42, 103 S.Ct. at 2334. Likewise, the affidavit should set forth the ·foundation for the officer's belief in an informant's credibility and veracity. However, "a deficiency in one may be compensated ... by a strong showing as to the other, or by some other indicia of reliability," all of which are relevant considerations under the totality of the circumstances. *Id.* at 233, 103 S.Ct. at 2329.

 *Gates* also instructs us that, as a reviewing court, we are to ensure that the magistrate had a substantial basis for concluding probable cause exists. *Id.* at 236, 103 S.Ct. at 2331; *see Bower v. State,* 769 S.W.2d 887, 902 (Tex.Crim.App.) (holding we do not conduct a de novo review but look to the evidence as a whole and determine whether there is substantial evidence to support the magistrate's decision), *cert. denied,* 492 U.S. 927, 109 S.Ct. 3266, 106 L.Ed.2d 611 (1989), *overruled on other grounds by Heitman,* 815 S.W.2d at 685 n. 6; *see also Cates,* 120 S.W.3d at 355 n. 3 (recognizing that before a *Franks* hearing may be held, defendant must make a substantial preliminary showing of falsity in the "four corners" of the probable cause affidavit). Because the trial court entered findings of fact and conclusions of law, we review this point on appeal by looking at the affidavit in light of the trial court's findings on the historical facts, giving deference to those findings. *Swearingen,* 2004 WL 1393813, at *3, 143 S.W.3d at 810–11.[3]

---

**3.** A copy of the officer's affidavit is attached as appendix "A" to this opinion, and a copy of the trial court's findings of fact and conclu-sions of law is attached as appendix "B" to this opinion.

## Analysis of the Trial Court's Probable Cause Challenge

■ In her motion to suppress, appellant claimed Officer Wallace's affidavit was deficient in two specific respects: it failed to state sufficient underlying facts to support the confidential informant's veracity, reliability, and basis of knowledge; and it failed to show sufficient independent investigation by the officer to corroborate many of the facts stated by this new, untested, and unknown confidential informant.

Relying on *Lowery v. State*, appellant contends that without having previously tested this informant's reliability, Officer Wallace should have more clearly detailed what efforts he undertook to independently verify the confidential informant's claims in his affidavit. 843 S.W.2d 136 (Tex.App.-Dallas 1992, pet. ref'd). Appellant contends that the information allegedly verified by Officer Wallace is only proof of "innocent facts" that are totally unrelated to whether there is any additional or independent corroboration by this officer of the facts asserted by this new confidential informant.

First, the affidavit shows that all the incriminating information sworn to by Officer Wallace comes from an unnamed confidential informant who "has never given information to a law enforcement agency before." The officer states that he verified that the confidential informant had been a Tarrant County resident for over twenty years and that the informant had been gainfully employed for over ten years. However, the officer fails to state how or when he verified this information about the informant or how this information makes this unnamed, untried informant more or less credible.

Officer Wallace also states in his affidavit that the confidential informant has familiarity with the packaging and characteristics of marijuana because the informant was arrested over six years ago on a "drug charge." However, Officer Wallace does not state what type of drug charge was involved, his source for this information, or whether he verified any charges or convictions against the informant. Thus, there is no basis to support the officer's sworn representations in the affidavit concerning the informant's familiarity or knowledge of what marijuana looks like, how it is packaged, or why the officer would rely on this alleged "drug charge" as the basis for the informant's knowledge about marijuana.

The officer also claims in his affidavit that the confidential informant identified two people at the 8240 Ulster Drive residence, "Barbara Davis" and "Troy Davis," who were "in possession of and growing a substantial quantity of . . . marijuana" and that the informant had seen "Troy Davis in possession of several handguns currently kept inside the residence." But the officer again fails to state how the informant knew what marijuana looked like, where the marijuana was growing, whether it was growing only inside, outside, or both, how many plants there were, or how many times the informant had observed it there. Further, the affidavit does not state on how many occasions, if more than one, that the confidential informant had been to the residence and observed marijuana growing there.

As to Troy Davis's alleged possession of handguns, Officer Wallace does not reveal what type of handguns Troy allegedly had, where they were kept inside the residence, or where the confidential informant observed Troy's possession of guns. There is no information in the affidavit stating the number of times the confidential informant saw any weapons or drugs, or how many times he had been to the house, only that he had been to the residence within the seventy-two hours preceding Officer

Wallace's execution of the affidavit. Officer Wallace does not include any information showing that he verified the informant's claim to have been in the house within this time period or at any other time. Likewise, the officer does not disclose how the informant knew these two people he saw in the residence, how he gained access to their house, how long they might have lived there, or whether either of them owned or controlled the house. The affidavit gives no information from the informant or from any other independent source regarding the relationship, if any, between the informant and the suspects.

The officer then says he verified some of the other identification information in the affidavit. He links a 1993 convertible red Ford Mustang owned and operated by a "Barbara Davis" to his own observation of the Mustang in the driveway at 8240 Ulster Drive. The officer then states that he was able to identify "Barbara Lynn Davis" through a driver's license check with the Texas Department of Public Safety, which showed that "Barbara Lynn Davis" had been issued a Texas driver's license number 05853410, that her birth date was March 25, 1950, and that she was physically described as being 5' 2", 105 pounds, with brown hair and eyes. Officer Wallace next states that he conducted an "NRH computer check" to tie "Barbara Lynn Davis" to the Ulster Drive address and an "MVD" check on the red Mustang, Texas tag number LZB-25V, which showed that it was registered to "Barbara L. Davis" at 8240 Ulster Drive, North Richland Hills, Texas. However, the officer never states that the "Barbara Lynn Davis" and "Barbara L. Davis" identified by these items is the same person as the "Barbara Davis" named by the confidential informant or the same as appellant, "Barbara Jean Davis."

The officer also states that he verified "Troy James Davis's" information through the Texas Department of Public Safety records as having driver's license number 04615205, and being described as a white male born December 1, 1974, 5' 6", and weighing 130 pounds with brown hair and blue eyes. He states that he also checked criminal records that showed a "Troy Davis" had been arrested for assault and weapons offenses. Again, however, the officer fails to clarify whether the "Troy Davis" identified by the confidential informant and the criminal records is the same person as the "Troy James Davis" identified by the officer.

In summary, the magistrate had to determine whether probable cause existed to issue a search warrant for the named location and an arrest warrant for the named individuals on the basis of an affidavit from an officer relying on an unknown, and untried, confidential informant that disclosed nothing beyond the following information:

- the informant had never provided information to a law enforcement agency before, yet the officer states the informant's identity is known;
- the informant needed to remain confidential for his "personal safety" and for the officer's "safety with regard to an ongoing undercover investigation," neither of which were supported or disclosed in the affidavit;
- identifying information contained in the affidavit showing people with middle names that were not verified to match the names of the alleged suspects' names, where the informant only provided their first and last names; and
- the information of the alleged criminal activity was not specific as to number of times or continuousness of criminal activity, was not clear as to locations

within or outside of the identified residence, and was not independently corroborated by any other source or surveillance.

This is the totality of information the officer gleaned from the confidential informant, little of which relates directly to potential crimes. The affidavit does not contain any information that would tend to show that this informant's information is reliable or that the officer undertook an independent investigation sufficiently thorough to compensate for the informant's lack of history or reliability with this officer or department. Additionally, the officer's affidavit does not tell us how the informant knew the occupants, what his relationship to them, if any, was, what the occupants' correct middle names were, or how long the informant had known the alleged occupants.

■■■ While the State concedes that a confidential informant's reliability is a factor for the magistrate to consider when reviewing the "totality of the circumstances" set forth in the affidavit to support probable cause, it contends that an independent investigation to corroborate the reliability of a new, untested confidential informant's tip is not a requirement. However, the failure to undertake verification diminishes the reliability of the tip under the "totality of the circumstances" when an informant is used for the first time and his identity is confidential. *See Lowery,* 843 S.W.2d at 141–42. "While information from an unnamed informant alone does not establish probable cause, the informant's tip combined with independent police investigation may provide a substantial basis for the probable-cause finding." *Id.* at 141 (citing *Janecka v. State,* 739 S.W.2d 813, 825 (Tex.Crim.App. 1987)).

Even though the State contends there is no requirement that police conduct an independent investigation to corroborate information provided by an informant, one could corroborate the facts showing or tending to show that a crime has been or will be committed by verifying those facts by some other means. *See generally Gates,* 462 U.S. at 232, 103 S.Ct. at 2329 (describing factors to consider in the totality of the circumstances analysis). Officer Wallace's lack of independent verification of the true identity of the suspects and their alleged criminal behavior makes the information provided by this untested confidential informant critically deficient under a totality of the circumstances analysis. This is particularly true when the affidavit is given not only to support probable cause to search the premises but also to arrest two particular suspects.

Based on the foregoing and while giving great deference to the magistrate's determination, we conclude and hold that the facts asserted in the affidavit are insufficient under the "totality of the circumstances" to establish that probable cause existed for the issuance of an arrest and search warrant on the appellant, her son, or their residence. For this reason, we cannot conclude that the magistrate had a substantial basis for concluding that a search would uncover evidence of a crime. We hold that conclusion of law number seven, which found that the totality of circumstances contained within the four corners of the affidavit supported the existence of probable cause, is erroneous. We therefore conclude that the trial court abused its discretion in failing to suppress the evidence obtained as a result of the search warrant under the *Swearingen* analysis or under the *Guzman, Johnson, Carmouche* analysis. We sustain appellant's point on appeal insofar as it challenges the admissibility of the evidence seized under a search warrant that lacked probable cause.

Under the rules of appellate procedure, we are required to hand down an opinion that is as brief as practicable but that addresses every issue raised and necessary to a final disposition of the appeal. TEX. R.APP. P. 47.1; *Sims v. State*, 99 S.W.3d 600, 604 (Tex.Crim.App.2003). Because sustaining this attack on the affidavit would require us to reverse and remand, potentially for a new trial, we must also address any other challenges to the affidavit that would necessarily be raised in a possible retrial. For this reason, we will address appellant's other challenge to the admissibility of the evidence seized under this search warrant under a *Franks* analysis. *Franks*, 438 U.S. at 154, 98 S.Ct. at 2674.

**Review of the Trial Court's *Franks* Hearing Determination**

 We review a trial court's decision on a *Franks* suppression issue under the same standard that we review a probable cause deficiency, a mixed standard of review: "We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor while we review de novo application-of-law-to-fact questions that do not turn upon credibility and demeanor." *Johnson*, 68 S.W.3d at 652–53. However, in a *Franks* hearing the trial court may consider not only the probable cause affidavit but also the evidence offered by the party moving to suppress because this attack on the sufficiency of the affidavit arises from claims that it contains false statements. *Franks*, 438 U.S. at 155–56, 98 S.Ct. at 2676.

 Under *Franks*, a search warrant affidavit must be voided, and any evidence obtained pursuant to the search warrant excluded, if a defendant can establish by a preponderance of the evidence at a hearing that the affidavit contains a false state-

ment made knowingly or intentionally, or with reckless disregard for the truth. *Id.* Then, setting the false material aside, the movant must also show that the affidavit's remaining content is insufficient to establish probable cause. *Id.; see also Hinojosa v. State*, 4 S.W.3d 240, 246 (Tex.Crim. App.1999).

 In *Cates*, the court of criminal appeals explained the distinction between a probable cause challenge to a search warrant affidavit and a challenge to the truthfulness of a search warrant affidavit:

When a challenge is made as to whether a search warrant affidavit is legally sufficient to show probable cause, the trial court is limited to the "four corners" of the affidavit. This is *entirely different from a challenge to the truthfulness of a warrant affidavit* and whether the affiant made knowing misrepresentations to establish probable cause. When the defendant challenges the warrant affidavit on the ground that it contains known falsehoods, as is the case here, *the trial court is not limited to the "four corners" of the affidavit.* Limiting a falsity challenge to the four corners of the warrant affidavit negates the underlying challenge and raises *serious due process concerns.* Thus, if a defendant has made a substantial preliminary showing of deliberate falsity, the trial court is *required* to go behind the "four corners" of the affidavit in a *Franks* evidentiary hearing.

*Cates*, 120 S.W.3d at 355 n. 3 (emphasis added) (citations omitted). To be entitled to a *Franks* hearing, a defendant must first make a preliminary showing that (1) the affidavit contains a false statement made knowingly or intentionally, or with reckless disregard for the truth, (2) the false statement is material to establishing probable cause, and (3) the remainder of the affidavit, when considered without the

false information, is insufficient to establish probable cause. *Franks,* 438 U.S. at 155–56, 98 S.Ct. at 2676.

In this part of appellant's point, appellant challenges the trial court's ruling denying her motion to suppress the evidence obtained due to falsities contained within the affidavit *after* the trial court held a *Franks* hearing.[4] The State contends that appellant failed to show by a preponderance of the evidence that the affidavit contained false statements and that the affidavit, without those false statements, is insufficient to support probable cause for issuance of the warrant.

**Analysis of the Trial Court's *Franks* Ruling**

■ At the *Franks* hearing, appellant called Officer Wallace to the stand, offered Officer Wallace's deposition from a related civil matter into evidence, and called several witnesses to support her challenge to the accuracy of several statements contained within the search and arrest warrant affidavit. Appellant identifies five statements in the affidavit that she claims are false:

1) that the confidential informant was a resident of Tarrant County for twenty years and employed there for ten years (paragraph 4.B.);

2) that "Barbara Lynn Davis," a white female with a date of birth of March 25, 1950, is in control of the house and place to be searched (paragraph 3);

3) that appellant's driver's license number is the same as the number identified for "Barbara Lynn Davis" (paragraph 4.G.);

4) that a "Barbara Lynn Davis" is the actual person residing at the Ulster Drive address, the target residence (paragraph 4.H.); and

5) that the red Mustang parked in the Ulster Drive driveway is registered to "Barbara L. Davis."

The first, contained in paragraph 4.B., states that the confidential informant had been a resident of Tarrant County for over twenty years and gainfully employed in Tarrant County for over ten years. Appellant produced an affidavit from one of the confidential informant's cousins, Lisa Davis. Lisa stated that the informant, Chris Davis, had not been a resident of Tarrant County, Texas consecutively over the past twenty years. She disclosed that Chris had lived in Las Vegas, Nevada. Chris also admitted that he has lived in Tomball and White Oak, Texas. Further, contrary to Officer Wallace's representation in his sworn affidavit, Chris admitted that he had worked part-time for about four months while he was in Las Vegas; thus, he was not employed solely in Tarrant County for ten years.

Officer Wallace admitted that he had never met the confidential informant in person, that he had only talked with the informant over the phone, and that he had relied on the alleged informant's father, Bob Davis, another person he did not know, to verify the informant's residential and employment history. Chris also testified that his full name is Robert Christopher Davis and that his father is Robert Lawrence Davis. Officer Wallace conceded that he had no way to verify that the people he talked with on the phone were actually the people named. Officer Wallace also confirmed that he had called Chris on instructions from Officer Wal-

---

**4.** In its brief, the State challenges the trial court's decision to even hold a *Franks* hearing, claiming appellant failed to make a preliminary showing of deliberate, false statements. The State has not filed its own appeal challenging the propriety of the court's decision to hold a *Franks* hearing, so we will not address it. TEX.R.APP. P. 25.2(a)(1); TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5), (c) (Vernon Supp.2004).

lace's supervisor, who had taken the preliminary call from Chris's father. Both Chris's residential history and his employment history were inaccurate, despite Officer Wallace's swearing that he had verified these two facts.

The next statement appellant claims is false appears in the third paragraph of the affidavit. Officer Wallace swears here that "Barbara Lynn Davis, W/F, 3/25/50" is in control of the house to be searched. Officer Wallace admits that the information he supplied regarding "Barbara Lynn Davis" has nothing to do with this appellant and that "Barbara Lynn Davis" does not reside at the subject house. Obviously, this information is therefore inaccurate. The State, however, claims that this is irrelevant because Officer Wallace did not know that "Barbara Lynn Davis" and "Barbara Davis" named by the informant were not the same person. However, this discrepancy goes directly to the reliability and credibility of the informant and the lack of clarification and independent investigation by Officer Wallace.

Similarly, paragraphs 4.G. (regarding the driver's license information) and 4.H. (regarding "Barbara Lynn Davis" as residing at the target house and the Mustang's registration to "Barbara L. Davis") of the affidavit are false. The evidence showed that the "Barbara Lynn Davis" named by Officer Wallace in the affidavit does not live at 8240 Ulster Drive, that the driver's license number Officer Wallace gave does not match the driver's license number of appellant, "Barbara Jean Davis," and that the red Mustang is not registered to "Barbara L. Davis" as Officer Wallace also swore in his affidavit. Thus, it is clear that much of the identifiers used by Officer Wallace were totally false and that he did little, if anything, to verify the accuracy of those identifiers, yet he swore to the accuracy of the facts in his affidavit. He con-

cedes he did not check the address on "Barbara Lynn Davis's" driver's license, which would have shown a completely different address.

While Officer Wallace might not have actually *known* this information was inaccurate, he *knew that he had not verified* this information despite swearing otherwise and that the preliminary information on these two people had come from a new informant. This failure to verify shows that Officer Wallace could have known and should have known of the falsity of the information and that he failed to verify the information with reckless disregard for its truth or accuracy.

Additionally, the warrant identifies a "Troy James Davis" as the suspect, whereas the confidential informant merely identified a "Troy Davis" as the suspect residing at the Ulster Drive location and as the person whom the informant saw in possession of several handguns. The license check Officer Wallace ran was on a "Troy James Davis," yet the criminal history check he ran that revealed some prior offenses was only on a "Troy Davis." Officer Wallace did not ever explain if and how he verified that these two people were one and the same. Despite only having the name "Troy Davis" to go on from the informant, Officer Wallace never identified or disclosed whether this "Troy Davis" was the same "Troy James Davis" identified as the suspect in his sworn affidavit. Officer Wallace admitted that he had no background "intelligence" when he presented his affidavit to the judge. He had not verified appellant's or her son's involvement with drugs or that her residence or the vehicle parked in the Ulster Drive driveway were related to any drug use or drug business. Likewise, Officer Wallace admitted that he had undertaken no independent investigation regarding the identity, credibility, or reliability of the confiden-

tial informant or the informant's father upon whom he relied, yet still claims to have only made a mistake.[5]

Further, there is no indication to support Officer Wallace's statement that the informant knew of the characteristics or packaging of marijuana. Officer Wallace never asked how the informant knew what marijuana looked like. He also failed to ask whether the informant was able to identify which plants contained the THC substance, male or female; Officer Wallace admitted that he did not ask because he did not know the difference either. Likewise, although Officer Wallace mentioned magazines, books, ledgers, notes, and computer files regarding distribution of marijuana in his affidavit, he admitted that the informant did not tell him that any of these items, other than the magazines, were at the residence.[6]

Officer Wallace also concedes he did not independently verify that the informant went back into the residence to substantiate the existence of the marijuana within seventy-two hours of the issuance of the warrants. Instead he states, "The drugs were substantiated *after* the search warrant. We did find drugs in there.... The confidential informant was sent inside the residence and verified that there was [sic] drugs inside the residence." [Emphasis added.] Officer Wallace further states that he did not personally see the confidential informant go inside the residence, and neither did anyone else; the confidential informant only *told* him that he went inside the residence. Further, Officer Wallace concedes he did not undertake any type of independent surveillance of the

suspects or attempt any buys either to confirm the existence of any drugs or to show that the suspects were dealing in drugs. In addition, Officer Wallace admitted that the informant was wrong about the number of plants, their size, their condition, and their location.

Regarding the weapons allegedly in Troy's possession, Officer Wallace did not require nor did the informant verify the number of weapons or their location in the residence, yet the officer requested a "no knock entry." The officer believed he had obtained authority from the judge but could not point to anything in the resulting warrant giving them permission for the "no knock entry."

In light of the lack of evidence to support the confidential informant's information or the informant's reliability, coupled with the attesting officer's failure to corroborate the allegedly illegal activity in particular, we must conclude that the officer, at a minimum, made several statements in his affidavit with reckless disregard for their truth and knowingly made false assumptions and statements regarding appellant's identity, location, and vehicle. Thus, it is clear that Officer Wallace's affidavit contained several falsehoods, some that related to the background of the untested confidential informant, others that related to verification of the actual identities of both targets and the location of one of them, and still others that were made with reckless disregard of the truth or accuracy regarding the illegal activity claimed.

---

**5.** In the *Franks* hearing, we learn from Officer Wallace that he actually knew there was some familial relationship among all the Davises and that there was an indication of problems among the confidential informant, his father, and the appellant, yet he never disclosed the familial relationship among the informant and the suspects in his affidavit.

**6.** The affidavit states that it is the affiant's experience that persons involved in the manufacture and sale of drugs often keep such items.

We cannot agree with the State that these falsities were mere "mistakes" the officer made when the evidence shows that the officer made these sworn statements with reckless disregard for their truth. When the false statements are removed, there remains no probable cause to support the arrest of the two individuals who were named, "Troy James Davis" and "Barbara Lynn Davis."[7] Likewise, when we remove the false statements the officer made regarding his verification of the reliability and credibility of the informant and the informant's knowledge of marijuana, there remains no probable cause to support the issuance of a search warrant at the target residence. Therefore, we conclude the warrants must be voided and any evidence obtained from the search must be excluded. *See Franks*, 438 U.S. at 155–56, 98 S.Ct. at 2676.

## Conclusion

Because we have determined that the trial court should have granted appellant's motion to suppress due to the search and arrest warrant's lack of probable cause under the totality of the circumstances and inclusion of statements made with reckless disregard for the truth, as shown at the *Franks* hearing, we sustain appellant's sole point. The judgment of the trial court is reversed and the case is remanded to the trial court for disposition in accordance with this opinion.

### appendix "A"

### AFFIDAVIT FOR SEARCH AND ARREST WARRANT

### THE STATE OF TEXAS

### COUNTY OF TARRANT

Warrant to search a particular place for a controlled substance, namely MARI-JUANA and seize evidence, books, records, ledgers, bank records, money orders, and computer files relating to the transportation, ordering sale and distribution of MARIJUANA and / or records relating to the receipt and / or disposition of proceeds from the distribution of MARIJUANA currency, financial instruments, jewelry, and / or other items of value and / or proceeds of drug transactions as evidence of financial transactions relating to obtaining, transferring, laundering, secreting, or spending large sums of money made from engaging in MARIJUANA distribution activities, telephone and address books, computer files, or paper reflecting names, address and / or telephone numbers of individuals, property, currency, and MARIJUA-NA, including video recordings, materials used in the packaging, cutting, weighing, and distributing of MARI-JUANA and firearms and electronic surveillance equipment believed concealed in a particular place.

(Based on information and belief).

The undersigned Affiant, being a peace officer under the laws of the State of Texas, and being duly sworn, on oath, makes the following statements and accusations:

1. There is in Tarrant County, Texas, a suspected place, premises and vehicles, described and located as follows:

A SINGLE STORY, SINGLE FAMILY DWELLING, LOCATED IN THE 8200 BLOCK OF ULSTER DRIVE, NORTH RICHLAND HILLS, TARRANT COUNTY, TEXAS, MORE SPECIFICALLY DESIGNATED AS 8240 ULSTER DRIVE. THE STRUCTURE IS LOCATED ON THE SOUTH SIDE OF ULSTER DRIVE, WITH THE FRONT OF

---

7. As we know, "Barbara Lynn Davis" was not even the person who was actually arrested.

This is particularly troubling since this warrant was not solely a search warrant.

 

THE STRUCTURE FACING NORTH, THE STRUCTURE IS CONSTRUCTED ON MULTI COLORED TAN BRICKS, WITH A TAN AND BROWN COLORED COMPOSITION STYLE ROOF, THE FRONT DOOR IS BEIGE IN COLOR AND FACES NORTH. A GLASS STORM DOOR IS ATTACHED IN FRONT OF THE FRONT DOOR. THE RESIDENCE HAS AN ATTACHED TWO–CAR GARAGE LOCATED ON THE EAST SIDE OF THE RESIDENCE. THE DIGIT 8240, WHICH ARE BLACK IN COLOR, ARE AFFIXED ON A BRICK MAIL BOX LOCATED IN FRONT OF THE RESIDENCE NEAR THE STREET.

2. There is at suspected place and premises, property concealed and kept in violation of the laws of the State of Texas, and described as follows:

THE ABOVE DESCRIBED PROPERTY AND MARIJUANA.

3. Said suspected place and premises are in the charge of and controlled by each of the following person(s):

Troy James Davis, W/M, 12/01/74

Barbara Lynn Davis, W/F, 03/25/50

4. Affiant has probable cause for said belief, by reasons of the following facts and information:

A. That your affiant, J.A. Wallace # 202, is a peace officer in the State of Texas and is currently employed as a Sergeant with the City of North Richland Hills, Tarrant County, Texas. Your Affiant has been employed as police officer for over thirteen years. Your Affiant has worked as a narcotics investigator for approximately seven years, and is currently assigned to the City of North Richland Hills, Special Investigations Unit. Your Affiant has attended several classes on narcotic identification and investigations, and has been involved in numerous narcotic investigations involving possession and trafficking of said narcotics.

B. That on December 14, 1999, your Affiant was contacted by a confidential informant (CI). This informant has never given information to a law enforcement agency before. However, the CI was arrested on a drug charge over 6 years ago and is familiar with the packaging and characteristics of MARIJUANA. That the CI has been a resident of Tarrant County for over 20 years and has been gainfully employed in Tarrant County for over 10 years. Further, that your affiant was able to verify that the CI has been a resident of Tarrant County for over 20 years and that he has been gainfully employed for over 10 years.

C. The CI stated that he/she knows a white male by the name of "Troy Davis", and his mother, "Barbara Davis" who are growing and concealing substantial quantities of MARIJUANA, within a residence, located at 8240 Ulster Drive, North Richland Hills, Tarrant County, Texas.

D. That the CI stated that he/she has been inside the residence within the last (72) hours and observed both suspect's in possession of and growing a substantial quantity of a substance known to the CI as MARIJUANA. Further, that the CI has observed Troy Davis in possession of several handguns currently kept inside the residence.

E. That the CI described the residence to your Affiant, as well as a vehicle: 1993 Red Ford Mustang Convertible, which is owned and driven by Barbara Davis. Further, your Affiant drove by and confirmed the address as 8240 Ulster Drive, North Richland Hills,

Tarrant County, Texas, and observed the above-described vehicle in the driveway of the residence.

F. That our Affiant was able to identify Troy James Davis through the Texas Department of Public Safety as having been issued Texas Drivers License # 04615205, which further described Troy Davis as a while male, born December 1, 1974, being 5' 6" tall, weighing 130 pounds, and having brown hair and blue eyes. Further, that a Criminal History check on Troy Davis revealed that he has been arrested for Assault and Weapons offenses.

G. That your Affiant was able to identify Barbara Lynn Davis through the Texas Department of Public Safety as having been issued Texas Drivers License # 05853410, which further described Barbara Davis as a white female, born March 25, 1950, being 5' 2" tall, weighing 105 pounds, having brown hair and brown eyes.

H. That your affiant conducted NRH computer checks on both Troy James Davis, As well as Barbara Lynn Davis, and was able to verify that both suspects list 8240 Ulster Drive as their current home address. Further, that an MVD check on the red 1993 Ford Mustang, bearing TX LP # LZB–25V, revealed that the vehicle is registered to Barbara L. Davis at 8240 Ulster Drive, North Richland Hills, Texas.

I. That in the experience of your Affiant, individuals involved in the manufacture, transportation, delivery, dispensation, or distribution of MARIJUANA often keep books, ledgers, notes, computer files, etc. concerning their criminal activities. Your Affiant is also aware that said individuals use mobile and cellular telephones, computer systems, and often possess firearms to protect their criminal activities form the police and/or other narcotic traffickers.

J. Due to the CI observing several firearms inside the suspects, your Affiant requests a "no knock entry" be permitted in this instance, in order to reduce the risk of injury to officers and individuals at the said suspected place, and to further prevent the destruction of evidence upon the arrival of police officers. That the officers will be clad in distinctive police clothing and will announce their presence in a clear and loud voice when entering said suspected place.

K. That the identity of the CI is known to your Affiant, but will remain confidential for reasons of personal safety and for your Affiant's safety with regard to an ongoing undercover investigation.

L. Your Affiant believes that Troy James Davis and Barbara Lynn Davis are currently in possession of, and growing MARIJUANA from within the residence, located at 8240 Ulster Drive, North Richland Hills, Tarrant County, Texas.

WHEREFORE, YOUR AFFIANT ASKS FOR THE ISSUANCE OF A WARRANT THAT WILL AUTHORIZE HIM TO SEARCH SAID SUSPECTED PLACE AND PREMISES, TO INCLUDE ALL OUTBUILDINGS, VEHICLES, AND CURTILAGE FOR THE PROPERTY DESCRIBED IN PARAGRAPH TWO (2) ABOVE, AND SEIZE THE SAME AND TO THEN ARREST EACH SAID DESCRIBED AND AS ACCUSED PERSON(S).

WITNESS MY SIGNATURE THIS THE 15 DAY OF December, 1999.

/s/ [signature]

AFFIANT

SUBSCRIBED, AND SWORN TO, BEFORE ME, BY SAID AFFIANT, ON THIS THE 15 DAY OF December 1999 at 9:20 (AM/PM).

/s/ [signature]
Magistrate in and for
Tarrant County, Texas

/s/ Judge, CDC #1
Description of office

### appendix "B"

### Cause No. 0754021D

STATE OF TEXAS

V.

BARBARA JEAN DAVIS

IN THE CRIMINAL DISTRICT

COURT NUMBER THREE

TARRANT COUNTY, TEXAS

### Court's Findings of Fact and Conclusions of Law

On August 31, 2001, this Court held a "Motion to Suppress Evidence" and a *"Delaware v. Franks"* hearing. The Court overruled the State's objection to having a *Delaware v. Franks* hearing and proceeded to hear testimony on both defense motions. On October 18, 2001, the Court issued an order denying the Defendant's Motion to Suppress. On April 25, 2002, the Court requested the State and the Defense to submit proposed findings of facts and conclusions of law. The Court has reviewed the submitted Finding of Fact and Conclusions of Law from both sides and issues the following:

**Findings of Fact:**

1. On December 15, 1999, Sergeant John Andrew Wallace, of the North Richland Hills Police Department presented a search and arrest warrant affidavit to Judge Sharen Wilson, Judge of Criminal District Court Number One of Tarrant County, Texas.

2. The search and arrest warrant affidavit contained statements that Sgt. Wallace had received information from a Confidential Informant (CI) and that the CI was a first time informant.

3. The affidavit contained statements that the CI was a longtime resident of Tarrant County and was gainfully employed. The affiant stated the CI had been in the home of Barbara and Troy Davis located at 8240 Ulster Drive, North Richland Hills, Texas, within seventy-two hours and had seen marijuana being grown at that location.

4. The affidavit contained some erroneous statements as well. Those statements are: describing the Defendant Barbara Davis as "Barbara Lynn Davis, DOB 03/25/50, Texas Driver's license # 05853410, 5' 2". Brown eyes and hair, weight 105 pounds." In fact the Defendant may be described as "Barbara Jean Davis, aka Barbara McNabb Davis, DOB 04/10/51, Texas Driver's License # 06338418, 4' 11", blond hair, blue eyes, weight 95 pounds."

5. Judge Sharen Wilson, found there was probable cause and issued the search and arrest warrant for Barbara Davis and Troy Davis and their home located at 8240 Ulster Drive, North Richland Hills, Tarrant County, Texas.

6. The search and arrest warrants were executed later that same day of December 15, 1999. The police used a "dynamic entry" into the home and announced their presence. The police were dressed in clothing

with the words "POLICE" prominently displayed. The Defendant's son, Troy Davis, was shot and killed during the service of the search and arrest warrant at 8240 Ulster Drive.

7. The police seized marijuana and a controlled substance: gamma hydroxybutyrate.

8. The Defendant, Barbara Davis, was arrested and taken to jail. At the jail, approximately four to six hours after the warrants had been carried out, Sgt. Wallace learned that some of the information in the affidavit was incorrect, specifically the Defendant's middle name, DOB and some physical descriptors were wrong in the affidavit.

9. The Defendant was subsequently charged in cause number 0754021 in three counts with: possession with intent to deliver four grams or more but less than two hundred grams of a controlled substance (gamma hydroxybutyrate); possession of four grams or more of a controlled substance; and manufacturing a controlled substance of four grams or more but less than two hundred grams.

## Conclusions of Law:

1. Judge Sharen Wilson, Judge of Criminal District Court Number One, Tarrant County, Texas, acted as a neutral and detached magistrate when she reviewed the search and arrest affidavit in the instant case.

2. A "totality of the circumstances" is the proper analysis in determining whether probable cause existed for issuing a warrant. *Illinois v. Gates,* 462 U.S. 213 [103 S.Ct. 2317, 76 L.Ed.2d 527] (1983) and *Hennessey [Hennessy] v. State,* 660 S.W.2d [87] 90 (Tex.Crim.App. 1983).

3. The adequacy of the search warrant affidavit is judge by its "four corners." *Lopez v. State,* 535 S.W.2d 643 (Tex.Crim.App.1976).

4. Probable cause exists when the facts and circumstances shown in the affidavit would warrant a person of reasonable caution in the belief that the items to be seized were in the stated place. *Brinegar v. United States,* 338 U.S. 160 [69 S.Ct. 1302, 93 L.Ed. 1879] (1949).

5. Although the search and arrest warrant affidavit in this case contains some inaccurate information, it was not known at the time the warrant was signed and executed. Further, the inaccuracies were not placed in the affidavit "deliberately or with a reckless disregard for the truth" and they were not material to a finding of probable cause. *Franks v. Delaware,* 438 U.S. 154 [98 S.Ct. 2674, 57 L.Ed.2d 667] (1978), *Hinojosa v. State,* 4 S.W.3d 240 (Tex.Crim.App.1999), *Janecka v. State,* 937 S.W.2d 456 (Tex.Crim. App.1999 [1996]).

6. In analyzing a magistrates' finding of probable cause, the reviewing court is bound to accord great deference to the magistrate's determination. *Spinelli v. State [U.S.],* 393 U.S. 410, 419 [89 S.Ct. 584, 21 L.Ed.2d 637] (1969). In this case, Judge Sharen Wilson found there was probable cause to issue the search and arrest warrant.

7. In the instant case, under the "totality of the circumstances" the affidavit for search and arrest warrant established probable cause for issuance of a warrant.

8. Even if the inaccurate information is excised, after the fact, from the affidavit, probable cause still exists for the warrants, *Franks,* 438 U.S. at 155–56 [98 S.Ct. 2674].

9. The police acted in good faith reliance on the signed arrest and search warrant. See, *U.S. v. Leon,* 469 U.S. 897 (1984).

10. The Defendant's Motion to Suppress Evidence is denied.

/s/ Kit Cooke

Judge Kit Cooke, Presiding Judge
Criminal District Court Number Three
Tarrant County, Texas.