COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-355-CR

 

 

RICHARD LEE MATHIS                                                         APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 396TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

Introduction

Appellant Richard Lee Mathis
appeals his conviction for capital murder. In two points, appellant argues that
the trial court erred by (1) denying his constitutional motion to suppress
evidence obtained under an invalid search warrant and (2) refusing to instruct
the jury with a Abenefit of
the doubt@ charge
concerning lesser included offenses.  We
affirm.

 








Background Facts

On October 7, 2004, Janice
Williams and several others were at the home of Donald Ellis (known as Hoppy)
on Elgin Street in Tarrant County.  Hoppy=s home was known as a smoke house, a place where people brought their
own crack cocaine and smoked it.  In the
early morning hours, appellant, with two of his friends, broke into Hoppy=s house and demanded powdered cocaine (known as raw).  Janice and Hoppy told appellant that they did
not have any raw because Hoppy=s place was a smoke house, but Hoppy told appellant that Roney Gibson,
who lived down the street on Bethune, did sell drugs.  Appellant then demanded that everyone empty
their pockets.  As Hoppy tried to empty
his shirt pocket, appellant hit him in the head with a gun, pointed the barrel
at Hoppy=s forehead, and pulled the trigger. 
The gun did not discharge.








Appellant then forced Janice
to go with him and his friends to Roney=s house.  With a gun to Janice=s back, appellant approached Roney=s house. Janice knocked on the door and identified herself to Roney,
who opened the door and let Janice, appellant, and appellant=s friends in the house.  Janice
told Roney appellant wanted some drugs, but before a drug transaction occurred,
gunfire erupted.  Appellant tried to take
Roney=s drugs, and the two began fighting. 
Roney boxed appellant into a corner, and appellant called for help from
his friend.  Janice testified that
appellant screamed, AShoot
him. . . .  kill him, kill him.@  Appellant=s accomplice then hit Roney, and appellant and his accomplice each
shot at Roney twice.  Appellant and his
friends left Roney=s house
without taking any drugs or money. 
Janice and Roney=s
girlfriend, who was also in the house at the time, came to Roney=s aid as soon as appellant and his friends left, but Roney was already
dead. 

While investigating the
murder, the police obtained a search warrant for appellant=s home.  After conducting the
search on October 8, 2004, Detective Johnson found (1) gray jean shorts, (2)
Reebok tennis shoes, (3) a .22 caliber Phoenix Arms pistol, (4) an unfired .308
rifle bullet, (5) a box of Magtech .32 ammunition, (6) a key chain with two
keys, (7) blood samples on both the shorts and shoes, and (8) five baggies of a
leafy green substance.  Although the gun
used in the offense was not recovered, the box of .32 caliber ammunition
matched the ammunition recovered from Roney=s body.  In addition, blood
samples collected from appellant=s shorts and shoes, which he admitted to wearing during the offense in
his statement to the police, were identified as Roney=s blood.








At trial, appellant filed a
motion to suppress the evidence found at his apartment and also requested a Abenefit of the doubt@ instruction regarding lesser included offenses.[1]  The trial court denied both requests.  A jury convicted appellant of capital
murder.  Appellant was sentenced to life
imprisonment in the Institutional Division of the Texas Department of Criminal
Justice.

Motion to Suppress

In his first point, appellant
argues that the trial court erred by denying his motion to suppress the
evidence obtained from an illegal search of his apartment.  Appellant contends the affidavit failed to
state sufficient facts to support a finding of probable cause that evidence of
Roney=s murder would be found in appellant=s apartment.

Standard of Review








In Swearingen v.
State, the court of criminal appeals clarified a distinction between the
standards of review we should use when reviewing warrantless searches and
searches pursuant to a warrant.  143
S.W.3d 808, 810-11 (Tex. Crim. App. 2004); Davis v. State, 144 S.W.3d
192, 196 (Tex. App.CFort Worth
2004, pet. ref=d) (op. on
reh=g).  When reviewing warrantless
searches, we apply the Guzman rule.[2]  But when reviewing searches pursuant to a
warrant, in accordance with Swearingen, we apply the deferential
standard articulated in Gates and Johnson.  Swearingen, 143 S.W.3d at 810-11
(citing Illinois v. Gates, 462 U.S. 213, 234-37, 103 S. Ct. 2317,
2330-32 (1983); Johnson v. State, 803 S.W.2d 272, 289 (Tex. Crim. App.
1990), overruled on other grounds by Heitman v. State, 815 S.W.2d
681, 685 n.6 (Tex. Crim. App. 1991)); Davis, 144 S.W.3d at 196.








Under these standards, we
look to the Atotality of
the circumstances@ regarding
the information contained in the affidavit. 
Johnson, 803 S.W.2d at 289; Davis, 144 S.W.3d at 197.  We give great deference to the magistrate=s determination of whether the affidavit reflects a Asubstantial basis@ for concluding that a search would uncover evidence of a crime.  Gates, 462 U.S. at 236, 103 S. Ct. at
2331; Davis, 144 S.W.3d at 197. 
Regardless, our review is limited to examining the four corners of the
affidavit to determine whether probable cause exists.  U.S.
Const. amend. IV; Tex. Const.
art. I, ' 9; Tex. Code Crim. Proc.
Ann. art. 18.01(b) (Vernon 2005);
Jones v. State, 833 S.W.2d 118, 123 (Tex. Crim. App. 1992), cert.
denied, 507 U.S. 921 (1993); Davis, 144 S.W.3d at 197; cf. Cates
v. State, 120 S.W.3d 352, 355 n.3 (Tex. Crim. App. 2003) (setting forth the
distinction between a suppression hearing and a Franks hearing where
additional evidence may be admitted to show the falsity of assertions within an
affidavit).  In this review, we are to
determine whether there is a fair probability, not an actual showing, that
contraband or evidence of a crime will be found in a particular place in light
of the totality of the facts set forth in the affidavit.  See Gates, 462 U.S. at 239, 103 S. Ct.
at 2332; Hennessy v. State, 660 S.W.2d 87, 89 (Tex. Crim. App. [Panel
Op.] 1983); Davis, 144 S.W.3d at 197. 
The officer=s affidavit
must provide the magistrate with a substantial basis for concluding that a
search would uncover evidence of wrongdoing.  Gates, 462 U.S. at 236, 103 S. Ct. at
2331; Swearingen, 143 S.W.3d at 809-10; Davis, 144 S.W.3d at 197.








Gates also instructs us that, as a reviewing court, we are to ensure that
the magistrate had a substantial basis for concluding probable cause
exists.  Gates, 462 U.S. at 236,
103 S. Ct. at 2331; Davis, 144 S.W.3d at 197; see Bower v. State,
769 S.W.2d 887, 902 (Tex. Crim. App.) (holding we do not conduct a de
novo review but look to the evidence as a whole and determine whether there is
substantial evidence to support the magistrate=s decision), cert. denied, 492 U.S. 927 (1989), overruled on
other grounds, Heitman, 815 S.W.2d at 685 n.6.  Because the trial court made findings of fact
and conclusions of law on the record, we review this point on appeal by looking
at the affidavit in light of the trial court=s findings on the historical facts, giving deference to those
findings.  Swearingen, 143 S.W.3d
at 810-11; Davis, 144 S.W.3d at 197.

Analysis








In this case, Detective
Cheryl Johnson presented the background facts of the offense in the affidavit
supporting the search warrant of the apartment where appellant had been
staying.  In the affidavit, she averred
that witnesses from the robbery on Elgin and the shooting on Bethune described
the assailant as a light-skinned black male between eighteen and twenty-one
years old with a ponytail and tattoos on his neck.  Detective Johnson also averred that she was
aware that the location of the robbery and the shooting were less than a
quarter mile from each other. 
Additionally, Detective Johnson averred that the light-skinned black
male described by witnesses was known as AStuff@ and lived
in Butler Housing.  Through more
investigation, Detective Johnson identified AStuff@ as
appellant Richard Lee Mathis, located his residence, and discovered he drove a
maroon Chevrolet Caprice.  Detective
Johnson averred that Janice identified appellant from a photo line-up as the
man involved in the robbery and murder of Roney Gibson.  Consequently, Detective Johnson requested a
search warrant to look for additional evidence of the crime at appellant=s apartment.  Specifically,
Detective Johnson=s affidavit
sought (1) guns, (2) ammunition, (3) drug or drug paraphernalia, (4) blood, and
(5) clothing worn during the offense, i.e., white t-shirt and tan shorts.








It is a fair inference from
these facts that evidence of the offense would be located in appellant=s apartment.  See Rodriguez
v. State, No. PD-1013-06, 2007 WL 1343066, at *3-4 (Tex. Crim. App. May 9,
2007) (holding that there was probable cause to issue a search warrant based on
reasonable inferences made by magistrate=s Acommonsensical
and realistic interpretation@ of affidavit).  Although
neither Detective Johnson nor the magistrate could be certain that such other
evidence existed, there was at least a fair probability that additional
evidence would be found.  See id. at
*4.  And A>[i]t does not distort common sense or read additional facts into the
affidavit to infer from=@ the facts averred to by Detective Johnson that appellant may have
hidden evidence such as a weapon or bloody clothes at his own apartment.  Id. at *5 (quoting Davis v. State,
202 S.W.3d 149, 156 (Tex. Crim. App. 2006)); cf. Sanchez v. State, No.
05-93-00767-CR, 1994 WL 79457, at *4 (Tex. App.CDallas 1994, pet. ref=d) (op. on reh=g) (not
designated for publication) (holding that it is a reasonable inference that
persons in possession of contraband tend to hide it because it is illegal).

Based on the totality of the
circumstances established in the affidavit, there was a fair probability that
evidence of the offense would be found in appellant=s apartment.  Therefore, giving
great deference to the magistrate=s determination that there was a substantial basis for a search
warrant, we hold that these facts and inferences are sufficient to establish
probable cause.  See id. at *5; Davis,
144 S.W.3d at 196-97.  We overrule
appellant=s first
point.  See Rodriguez, 2007 WL
1343066, at *5; Davis, 144 S.W.3d at 196-97. 

ABenefit of
the Doubt@ Charge as
to Lesser Included Offenses

In his second point,
appellant argues that the trial court erred when it denied his request for a Abenefit of the doubt@ charge regarding lesser included offenses.

Applicable Law








The trial court is obligated
to charge the jury on the law applicable to the case, not expressing any
opinion as to the weight of the evidence. 
Tex. Code Crim. Proc. Ann.
art. 36.14 (Vernon 2007).  Before the
charge is read to the jury, the defendant is entitled to reasonable time to
examine the charge and present any objections in writing.  Id.  In addition, both parties are entitled to
reasonable time to present written instructions to be included in the
charge.  Id. art. 36.15 (Vernon
2006).  As a general rule, if evidence in
a case leaves a reasonable doubt as to the grade or degree of the offense, upon
a request by the defendant, the trial court must give the jury a Abenefit of the doubt@ instruction.  Benavides , 763
S.W.2d at 589; Shelby v. State, 724 S.W.2d 138, 139 (Tex. App.CDallas 1987) (op. on reh=g), vacated on other grounds, 761 S.W.2d 5 (Tex. Crim. App.
1988).  A Abenefit of the doubt@ instruction is required even when the charge includes a proper
instruction on reasonable doubt as applied to the whole case.  Shelby, 724 S.W.2d at 139.  This additional instruction clears up
confusion when the jury has no reasonable doubt that the defendant committed an
offense, but is uncertain concerning the grade or degree of that offense.  Benavides, 763 S.W.2d at 589.  A court=s refusal to include a Abenefit of the doubt@ instruction is not harmful to the defendant, however, if the charge
as a whole leaves no uncertainty as to how to resolve any doubt.  Id.; Shelby, 724 S.W.2d at 140.


Here, appellant asked for the
following to be added to the charge:








My other
requested charge is after or at the end of page 11, which is after the
application paragraph for aggravated robbery, I=d ask the Court to put a instruction in that says the C to the jury that if they feel that the Defendant=s guilty of one of the two offenses charged, that being capital murder
or aggravated robbery, but they can=t decide which one it is, that they need to resolve that in favor of
the Defendant, or if they have a reasonable doubt about which one it is, they
have to resolve that in favor of the Defendant and give him the benefit of the
doubt and find him guilty of that offense of aggravated robbery.

The trial court denied appellant=s request.  However, the trial
court gave the jury the following instruction: 

Now, if you find from the evidence beyond a
reasonable doubt that on or about the 7th day of October, 2004, in
Tarrant County, Texas, the Defendant Richard Lee Mathis, did intentionally
cause the death of an individual, Roney Gibson, by shooting him with a firearm,
and the said Defendant was then and there in the course of committing or
attempting to commit the offense of robbery of Roney Gibson, or that the
Defendant, Richard Lee Mathis, acting with the intent to promote or assist in
the commission of the offense of Capital Murder, if any, solicited, encouraged,
directed, aided or attempted to aid Antonio Hampton and Michael Freeman in the
commission of the offense of Capital Murder, if any, or that the Defendant,
Richard Lee Mathis and Antonio Hampton and Michael Freeman agreed to rob Roney
Gibson, and that, while in the course of committing or attempting to commit the
offense of robbery of Roney Gibson, if any, the shooting of Roney Gibson, if
any, and was done intentionally and in furtherance of the conspiracy to rob
Roney Gibson, if any, and was an offense that should have been anticipated as a
result of carrying out the conspiracy, then you will find the Defendant guilty
of the offense of capital murder.

 

Unless you find beyond a reasonable doubt, or if
you have a reasonable doubt thereof, you will acquit the Defendant of capital
murder and next consider whether the Defendant is guilty of the offense of
aggravated robbery.

 








Now, if you find from the evidence beyond a
reasonable doubt that on or about the 7th day of October, 2004, in
Tarrant County, Texas, the Defendant, Richard Lee Mathis, did intentionally or
knowingly, acting alone or as a party, as that term has been previously
defined, while in the course of committing theft of property and with intent to
obtain or maintain control of said property, cause bodily injury to Roney
Gibson and the defendant used or exhibited a deadly weapon, to wit: a firearm,
then you will find the defendant guilty of the offense of aggravated robbery.

 

Unless you find from the evidence beyond a
reasonable doubt, or if you have a reasonable doubt thereof, you will acquit
the defendant and say by your verdict ANot Guilty.@

 

Accordingly, the application
paragraphs of the court=s charge
first asked the jury to consider whether it found beyond a reasonable doubt
that the appellant was guilty of the offense of capital murder.  See Benavides, 763 S.W.2d at 589.  Next, the application paragraph instructed
the jury that if it did not so find, it should acquit appellant of capital
murder and then consider whether he was guilty of aggravated robbery.  See id.  It further instructed that if the jury did not
find appellant guilty of aggravated robbery beyond a reasonable doubt, it
should acquit appellant of that offense as well.  See id.








The charge in this case
clearly instructed the jury that it should acquit appellant of the greater
offense, i.e., capital murder, if it was not convinced beyond a reasonable
doubt of his guilt.  See id.  Furthermore, it also instructed the jury that
if it had a reasonable doubt about appellant=s guilt concerning the lesser offense, aggravated robbery, it should
acquit appellant of the lesser included offense as well.  See id. 
Thus, no additional Abenefit of the doubt@ instruction was necessary.  See
id.; Shelby, 724 S.W.2d at 140.  We
hold that the trial court did not err in refusing the instruction, and we
overrule appellant=s second
point.

Conclusion

Having overruled appellant=s two points, we affirm the trial court=s judgment.

 

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL F:    LIVINGSTON, HOLMAN, and GARDNER, JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:
October 11, 2007











[1]A Abenefit
of the doubt@
instruction is an added instruction that is given in the jury charge to clear
up any confusion that the jury may have when it has no reasonable doubt that
the defendant committed an offense, but is uncertain about the degree of that
offense.  Benavides v. State, 763
S.W.2d 587, 589 (Tex. App.CCorpus Christi 1988, pet. ref=d). 





[2]Since
Guzman was issued in 1997, this court has used a deferential abuse of
discretion standard of review.  We give
almost total deference to a trial court=s or magistrate=s
determination of facts but review the trial court=s
application of law to the facts de novo. 
Johnson v State, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); Carmouche
v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997).