COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                       NOS.
2-07-001-CR

                                               2-07-002-CR

                                               2-07-003-CR

 

 

JAMES CLAYTON FENOGLIO                                                 APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 97TH DISTRICT COURT OF MONTAGUE COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------








Appellant James Clayton
Fenoglio appeals his convictions for possession of methamphetamine of at least
four but less than two hundred grams, possession of four hundred or more grams
of methamphetamine, and possession or transportation of anhydrous ammonia with
the intent to manufacture methamphetamine. 
In four points, he challenges the trial court=s denial of his motion to suppress, denial of his motion for mistrial,
denial of his motion for new trial, and assessment of two sentences for what he
contends is the same offense (possession of methamphetamine in two different
weight categories).  We affirm in part
and reverse and render in part.

I.  Background Facts

On August 17, 2004, Officer
John Spragins and his partner Officer Bobby Dilbeck flew over appellant=s Montague County property in a helicopter looking for marijuana
plants.[1]  Although they were looking for marijuana over
the entire county, they had received information that appellant might be
growing marijuana, so they made sure to fly over his property that day.[2]  

As the officers were flying
over appellant=s property,
they saw five or six three-to-four feet tall marijuana plants growing in large,
plastic containers.  The plants were next
to a row of hay bales at the end of a dirt road or trail[3]
that led from the plants to the back part of the only house on the
property.  A large container of water and
a scoop were next to the plants, which appeared to be in good condition.








The helicopter landed, and
Officer Dilbeck radioed an already-assembled ground crew with its
location.  While he was waiting for the
ground crew to arrive, Officer Dilbeck typed an affidavit for a search warrant
on his laptop.  The ground crew entered
the property to secure it while Officers Dilbeck and Spragins drove in a car to
Bowie to obtain a search warrant based on Officer Dilbeck=s affidavit.  Officer Dilbeck
told the ground crew not to search the property until he and Officer Spragins
had secured a warrant.  

After the officers obtained a
warrant, they returned to the property; no search had yet begun.  At the entrance gate to the property,
Officers Dilbeck and Spragins encountered appellant driving his truck.  They stopped him and served the warrant.  The officers asked appellant if he had drugs
in the truck, and he said he did not know, but that there may be.  Officer Dilbeck opened the door and looked in
the truck; inside in plain view he saw a small pouch and a Tootsie Roll
container on the seat.  Inside the Tootsie
Roll container, Officer Dilbeck found marijuana.  He also found a glass pipe in a case that had
burned residue consistent with marijuana or methamphetamine, an Altoids
container that contained baggies with methamphetamine inside, and a handwritten
list, which appeared to be a to-do list with items on it, such as Aweigh smoke@ and AMiracle Gro,@ all within
the truck.  








The officers arrested
appellant, and they all went to the house. 
Appellant voluntarily unlocked the door to the house and gave officers
the key.  Appellant told the officers he would
show them the other drugs in the house. 
He then showed them an envelope with marijuana in it and told them that
it was all he had.  The officers found
several empty baggies in the kitchen that Officer Dilbeck thought could be used
to package marijuana.  

The officers also found a
safe in the master bedroom.  Appellant
initially denied having the combination to the safe, but he eventually gave
them the combination.  Three bags of
methamphetamine and a book entitled, Marijuana Grower=s Guide, were inside the safe.  The officers also found a tank with anhydrous
ammonia and a large quantity of methamphetamine in a cooler on the back porch. 

The State charged appellant
with possession of methamphetamine of at least four but less than two hundred
grams, possession of four hundred or more grams of methamphetamine, and
possession or transportation of anhydrous ammonia with the intent to
manufacture methamphetamine.  A jury
convicted appellant of all three offenses. 
In accordance with the jury=s recommendation, the trial court sentenced appellant to ten years= confinement, probated for ten years, plus a $10,000 fine, on the
first and third offenses, and to twenty years= confinement, plus a $10,000 fine, on the second offense.  Appellant appeals all three convictions.

II.  Motion to Suppress








In his first issue, appellant
contends that the trial court erred by denying his motion to suppress.  According to appellant, Officer Dilbeck
deliberately or recklessly included false material allegations of fact in the
affidavit supporting the search warrant in that (1) the allegation in the
warrant that the officers landed the helicopter near the plants for Aconfirmation@ Aprevents any >plain view= allegation from being substantiated in that the requirement of
confirmation prevents them from being >immediately apparent,=@ and (2) the allegation that the plants were locate Anear@ the
residence was false because the evidence showed that they were located two
hundred to two hundred fifty yards from the house and that the plants could not
be seen from the house.  Appellant
contends that when the warrant is considered without these allegations, the
remainder is insufficient and, therefore, all evidence of methamphetamine,
which the officers discovered pursuant to serving the warrant, should be
suppressed.[4]

A. 
Standard of Review and Applicable Law








An affidavit supporting a
search warrant begins with a presumption of validity.  Cates v. State, 120 S.W.3d 352, 355
(Tex. Crim. App. 2003).  In Franks v.
Delaware, the United States Supreme Court held that when a Adefendant makes a substantial preliminary showing that a false
statement knowingly and intentionally, or with reckless disregard for the
truth, was included by the affiant in the warrant affidavit, and if the
allegedly false statement is necessary to the finding of probable cause, the
Fourth Amendment requires that a hearing be held at the defendant=s request.@  438 U.S. 154, 155-56, 98 S. Ct. 2674, 2676
(1978).  To obtain a Franks
hearing, a defendant has the burden of making a preliminary showing of
deliberate falsehoods in the affidavit supporting the warrant.  Id.; Cates, 120 S.W.3d at 355.








We review a trial court=s decision on a Franks suppression issue under the same
standard that we review a probable cause deficiency, a mixed standard of
review:  AWe give almost total deference to a trial court=s rulings on questions of historical fact and application‑of‑law‑to‑fact
questions that turn on an evaluation of credibility and demeanor while we
review de novo application‑of‑law‑to‑fact questions
that do not turn upon credibility and demeanor.@  Johnson v. State, 68
S.W.3d 644, 652‑53 (Tex. Crim. App. 2002); Davis v. State, 144
S.W.3d 192, 201 (Tex. App.CFort Worth 2004, pet. ref=d).  However, in a Franks
hearing the trial court may consider not only the probable cause affidavit but
also the evidence offered by the party moving to suppress because this attack
on the sufficiency of the affidavit arises from claims that it contains false
statements.  Franks, 438 U.S. at
155‑56, 98 S. Ct. at 2676; Cates, 120 S.W.3d at 355 n.3; Davis,
144 S.W.3d at 201.

Under Franks, a search
warrant affidavit must be voided, and any evidence obtained pursuant to the
search warrant excluded, if a defendant can establish by a preponderance of the
evidence at a hearing that the affidavit contains a false statement made
knowingly or intentionally, or with reckless disregard for the truth.  438 U.S. at 155-56, 98 S. Ct. at 2676; Davis,
144 S.W.3d at 201.  Then, setting the
false material aside, the movant must also show that the affidavit=s remaining content is insufficient to establish probable cause.  438 U.S. at 155-56, 98 S. Ct. at 2676; Davis,
144 S.W.3d at 201.

B.  Analysis

The probable cause portion of the affidavit prepared by Officer
Dilbeck reads as follows, in pertinent part:

On
81704 at approx. 1530 hours Affiant and Officer John Spragins were flying in an
Air National Gaurd [sic] helicopter in Montague County, Texas.  Officers were looking for the illegal growing
of marijuana in this area.  As officers
flew over the property and residence of Fenoglio they observed several
marijuana plants growing.  The plants
were in large plastic containers and located near the residence.  A dirt roadway leads from the residence
directly to the location of the marijuana plants.  A large bucket filled with water containing a
plastic scoop was next to the plants as someone has been tending and watering
the marijuana plants.  








Affiant
has received specialized training in the detection of growing marijuana plants
and has spotted marijuana plants from the air in the past.  Upon detecting the plants Affiant and Officer
Spragins landed in the helicopter near the plants for confirmation.  The marijuana plants were in plain view from
the air and Affiant immediately identified the plants as marijuana.  Affiant called for assistance from members of
the North Texas Drug Task Force and Montague County Sheriff=s
Office.  The marijuana plants were
secured and a search warrant was obtained.

 

Affiant
believes that more marijuana may be located in the residence.

 

Appellant first contends that
Officer Dilbeck=s statement
that the officers had to land the helicopter for Aconfirmation@ belies his
other statements that the plants were in plain view because if the officers had
to confirm the presence of marijuana, Officer Dilbeck could not have Aimmediately identified the plants as marijuana@ as he claimed.  At the
suppression hearing, Officer Dilbeck testified that the purpose of landing the
helicopter by the plants was A[t]o secure them.@  He also explained that the
officers landed to make sure that no one Amessed with@ the
marijuana; he did not know at the time whether anyone was in the house or
otherwise on the property at the time. 
He never deviated from his testimony that the marijuana plants were in
plain view from the air and that he was able to recognize them from the air as
marijuana. 








In findings of fact, the
trial court found that Aaccording to
the face of the affidavit,@ the officers observed the marijuana growing in plain view before they
landed the helicopter on the property and A[t]hat landing the aircraft on the premises was done for the purpose
of securing the premises prior to obtaining a search warrant, and that no
search of the premises by any law enforcement officer began prior to their
having obtained and executed the search warrant for the premises.@ [Emphasis added.]  Deferring to
the trial court=s assessment
of Officer Dilbeck=s
credibility, as we must under the applicable standard of review, we conclude
that the trial court did not err by denying the motion to suppress on the
ground that Officer Dilbeck=s statements that the plants were in plain view and that he
immediately identified them from the air were false.

Appellant additionally
contends that Officer Dilbeck=s statement that the plants were Anear@ the
residence is false and that Officer Dilbeck knowingly, intentionally, or
recklessly included that statement in the affidavit.  Appellant points to Officer Dilbeck=s testimony that the plants were two hundred to two hundred fifty feet
away from the residence and that a person could probably not see the plants
from the house.  








Officer Dilbeck testified at
the suppression hearing that the plants were two hundred to two hundred fifty
yards away from the house, or about two football fields.  He agreed that the plants were separated from
the house by a tree line and that a person probably could not see the plants
from the house.  Although Officer Dilbeck
did not include specifics in the affidavit as to how far away the plants were
from the house, he did indicate that A[a] dirt roadway leads from the residence directly to the location of
the marijuana plants,@ so the
affidavit included information showing that the plants were not located in the
backyard, porch, or similar location. 
Officer Dilbeck testified at the suppression hearing that the road was
not paved or blacktop, but it was obviously traveled; he agreed that it could
be characterized as a Abeaten path.@  He also testified that the Adirt road, a trail, . . . led from the back part of [appellant=s] house to a row of large hay bales@ next to which the marijuana was planted.  According to Officer Dilbeck, Asomebody was definitely tending to the plants because the plants were
in very good condition.@  Appellant introduced photographs into
evidence at the suppression hearing that confirm Officer Dilbeck=s testimony about the location of the plants.








The trial court found A[t]hat the growing marihuana plants seized pursuant to the search
warrant were located by or on a pathway that leads to the residence and on to
Hundley Road and that, therefore, the location of the plants was connected to
the residence.@  It also found that Officer Dilbeck=s statement in the affidavit that the plants were Anear@ the
residence was not false.  We defer to the
trial court=s
conclusion; it is apparent from the affidavit that the plants were not
immediately adjacent to the house and that a person would have to travel by
some means to reach them.  In addition,
Officer Dilbeck=s testimony
and the photographs of the plants show that they were healthy, were being
tended, and could easily have been accessed from the house via the dirt
path.  Furthermore, Officer Dilbeck
testified that the only access to the plants was via this path between the
house and the plants and that there was no other way to get water to the
plants.[5]  We hold that the trial court did not err by
denying the motion to suppress on the ground that Officer Dilbeck=s statement that the plants were Anear@ the house
was false.

Appellant=s contention that the search of the truck was illegal is based on his Franks
arguments above; because we hold that the trial court did not err by denying
suppression of the drugs on those grounds, we reject appellant=s argument that the search of the truck was based on an illegal search
warrant.[6]  We overrule appellant=s first point.

III.  Motion for Mistrial

In his second point,
appellant contends that the trial court erred by denying his motion for
mistrial and objection based on an unqualified juror serving on the jury at
both guilt-innocence and punishment.








Immediately after the trial
court=s announcement of the jury=s decision regarding punishment on all three offenses, the trial court
questioned a juror about whether he actually lived in Oklahoma rather than in
Montague County.  The juror told the
judge that he lived in Ringgold,[7]
but that he used to live in Terral[8]
and had a house there.  He said he had
been living in Ringgold between three and six months before trial.[9]  Upon further questioning, however, the juror
stated that he had actually lived in Terral for the last four to five years but
that he worked in Texas during the day, he had a Texas driver=s license, and his truck had Texas tags.  The juror further said that he rented a P.O.
box in Texas and that all his mail went to the Texas address.  He was also registered to vote in Texas.  Although appellant=s counsel asked questions of the juror, he did not file a motion for
mistrial until almost two months later, prior to the trial court=s sentencing appellant. 

The code of criminal
procedure provides that a person is disqualified to serve as a juror in a
criminal case if he or she Ais not a qualified voter in the state and county under the
Constitution and laws of the state.@  Tex. Code Crim. Proc. Ann. art. 35.16(a)(1) (Vernon
2006).  The government code requires a
juror to be Aa citizen of
this state and of the county in which the person is to serve as a juror.@  Tex. Gov=t Code Ann. ' 62.102(2) (Vernon Supp. 2007).








The failure to make a timely
objection to a juror=s
qualifications waives the right to challenge those qualifications.  Mayo v. State, 4 S.W.3d 9, 12 (Tex.
Crim. App. 1999); Collum v. State, 96 S.W.3d 361, 366 (Tex. App.CAustin 2002, no pet.).  The
statutory qualifications for jurors are not absolute and can be waived.  Mayo, 4 S.W.3d at 12; Collum,
96 S.W.3d at 366.  A[E]ven if an absolutely disqualified juror sits on a criminal jury,
reversal of the conviction is permitted only if the defendant timely objected
at trial or shows significant harm on appeal.@  Mayo, 4 S.W.3d at 12.

Rule 33.1(a)(1) of the Texas
Rules of Appellate Procedure provides that, as a prerequisite to presenting a
complaint for appellate review, the record must show that the complaint was
made to the trial court by a timely and specific request, objection, or
motion.  Tex. R. App. P. 33.1(a)(1); Griggs v. State, 213
S.W.3d 923, 927 (Tex. Crim. App. 2007), cert. denied, 128 S. Ct. 153
(2007).  Under rule 33.1(a)(1), a motion
for mistrial must also be both timely and specific.  Tex.
R. App. P. 33.1(a)(1); Griggs, 213 S.W.3d at 927; Young v.
State, 137 S.W.3d 65, 65‑66 (Tex. Crim. App. 2004).   A motion for mistrial is timely only if it
is made as soon as the grounds for it become apparent.  Griggs, 213 S.W.3d at 927.  Error in seating a juror who is not a
resident of the county is waived by failing to inquire about jurors= residency status during voir dire and by failing to make a challenge
for cause at that time.  Gaona v.
State, 733 S.W.2d 611, 618 (Tex. App.CCorpus Christi 1987, pet. ref=d).








Appellant contends that his
objection Awas made at
the earliest possible time prior to any further proceedings taking place.@  But appellant waited almost
two months after the trial court=s questioning of the juror before moving for a mistrial.  We hold that appellant=s motion for mistrial was not timely; thus, appellant failed to
preserve this issue for our review.  See
Griggs, 213 S.W.3d at 927. We overrule appellant=s second point.

IV.  Allegations of Jury
Misconduct

In his third
point, appellant challenges the trial court=s denial of his motion for new trial on the grounds that the jury
violated the trial court=s mandatory
instructions not to consider how parole might apply to appellant and that
during the jury=s deliberations,
a juror discussed his personal knowledge of the parole process.

On October 25, 2006,
appellant filed a motion for new trial, in which he alleged that the jury
improperly discussed the effects that parole would have on appellant=s sentence and that a juror had Aoffered personal experiences to help guide the jury in its
deliberation on how parole usually works on a sentence.@  At the hearing on the motion,
appellant attempted to introduce into evidence an affidavit from defense
counsel, which included the following, in pertinent part:








Following
[appellant=s]
sentencing on September 29, 2006, letters were sent to each of the jury members
inquiring as to certain activities that may have taken place during the course
of the trial.  Attached hereto as Exhibit
A1@ is a
letter forwarded to [one of the jurors]. . . . 
The answers of [the juror] clearly show the jury committed misconduct in
considering issues that they were instructed not to use in reaching a verdict
either in the guilt/innocence or punishment phase.  

 

Attached to the affidavit is the letter
questionnaire to the juror, with the juror=s handwritten answers.  To the
question asking, AWas there
any discussion regarding the effect that parole would have on a sentence,@ the juror answered yes.  To the
question, ADid any
other juror offer any personal experience to help guide the jury in its
deliberation?@, the juror
answered, A[O]nly how
parole usually works [regarding] a sentence.@  

The State objected to the
admission of the affidavit and letter under rule 6.06(b) of the rules of
evidence, which provides that

[u]pon
an inquiry into the validity of a verdict or indictment, a juror may not
testify as to any matter or statement occurring during the jury=s
deliberations, or to the effect of anything on any juror=s
mind or emotions or mental processes, as influencing any juror=s
assent to or dissent from the verdict or indictment.  Nor may a juror=s
affidavit or any statement by a juror concerning any matter about which the
juror would be precluded from testifying be admitted in evidence for any of
these purposes.  However, a juror may
testify:  (1) whether any outside
influence was improperly brought to bear upon any juror; or (2) to rebut a
claim that the juror was not qualified to serve.

 

Tex. R. Evid. 606(b).  The trial court
admitted the affidavit but not the letter.  
The trial court then denied appellant=s motion for new trial.  








The plain language of rule
606(b) indicates that an outside influence is something outside of both the
jury room and the juror.  White v.
State, 225 S.W.3d 571, 574 (Tex. Crim. App. 2007).  Here, the juror=s answers to the questionnaire clearly relate to the jury=s deliberation and not to any outside influence.  Nor do they relate to a claim that a juror
was unqualified to serve.  Accordingly,
the trial court did not err by refusing to admit the juror=s answers to the questionnaire. 
See id. at 574-75.  And the
affidavit alone does not show grounds for granting a new trial.  See Tex.
R. App. P. 21.3 (listing grounds upon which new trial must be
granted).  Accordingly, we overrule
appellant=s third
point.

V.  Double Jeopardy Allegation

In his
fourth and final point, appellant claims that he received multiple punishments
for the same offense, possession of a controlled substance, in violation of the
Double Jeopardy Clause of the United States Constitution.  Although appellant=s two convictions for possession of methamphetamine were for different
amounts, he contends that Amultiple possessions of . . . methamphetamine would all add up to the
same offense which would prevent a prosecution of . . . [a]ppellant on more
than one indictment alleging methamphetamine on the same date.@  Appellant was indicted for and
convicted of possession of methamphetamine of at least four but less than two
hundred gramsCwhich the
State contends is the amount of methamphetamine the officers found when they
searched appellant=s truckCand possession of four hundred or more grams of methamphetamineCwhich the State contends is the amount of methamphetamine found in
appellant=s house. 








The Double Jeopardy Clause of
the United States Constitution provides that no person shall be subjected to
twice having life or limb in jeopardy for the same offense.  U.S. Const.
amend. V; Ex parte Cavazos, 203 S.W.3d 333, 336 (Tex. Crim. App.
2006).  Generally, this clause protects
against (1) a second prosecution for the same offense after acquittal, (2) a
second prosecution for the same offense after conviction, and (3) multiple
punishments for the same offense.  Brown
v. Ohio, 432 U.S. 161, 165, 97 S. Ct. 2221, 2225 (1977); Cavazos,
203 S.W.3d at 336.

AA defendant
suffers multiple punishments in violation of the Double Jeopardy Clause when he
is convicted of more offenses than the legislature intended.@  Ervin v. State, 991
S.W.2d 804, 807 (Tex. Crim. App. 1999). 
The legislature determines whether offenses are the same for double
jeopardy purposes by defining the Aallowable unit of prosecution.@  Cavazos, 203 S.W.3d at
336.  Thus, to determine the scope of the
Double Jeopardy Clause=s protection
against multiple punishments in a particular case, we must ascertain the allowable
unit of prosecution for an offense.  See
id.








To prove unlawful possession
of a controlled substance, the State must prove that the accused exercised
control, management, or care over the substance and that he knew the matter possessed
was contraband.  Tex. Health & Safety Code Ann. '' 481.002(38) (Vernon Supp. 2007), 481.115 (Vernon 2003); Joseph v.
State, 897 S.W.2d 374, 376 (Tex. Crim. App. 1995); Tucker v. State,
183 S.W.3d 501, 510 (Tex. App.CFort Worth 2005, no pet.).  In
possession‑oriented offenses, the proscribed item is the allowable unit
of prosecution.  Ex parte Gonzalez,
147 S.W.3d 474, 477-78 (Tex. App.CSan Antonio 2004, pet. ref=d), cert. denied, 546 U.S. 1182 (2005); see also Watson v.
State, 900 S.W.2d 60, 62 (Tex. Crim. App. 1995) (holding that possession of
two different Penalty 1 substances, i.e., heroin and cocaine, with intent to
deliver constituted two separate offenses). 
Thus, in this case, the allowable unit of prosecution is the
methamphetamine.  See Ex parte Hill,
48 S.W.3d 283, 287-88 (Tex. App.CSan Antonio 2001, pet. ref=d).

Appellant contends that the
methamphetamine found in the truck and house must be considered together, so
that he could be convicted and punished only for the greater offense of
possession of four hundred or more grams of methamphetamine.  The State contends that the two convictions
are for separate offenses because they are for Adifferent quantities of methamphetamine possessed by [a]ppellant at
different locations on the same date.@  According to the State,

[t]he key question is whether
the legislature intended to allow prosecution for both the possession of
methamphetamine in the pickup and that taken from the residence as two separate
offenses.  The only consistent answer to
the question is that the intent of the legislature must have been to allow
prosecution of both offenses if they are committed as distinctly separate
acts.  In this case, [a]ppellant
possessed distinctly different quantities of the same controlled substance at
two different locations at the same or nearly the same time. 








Here, the officers
encountered appellant in his truck at the entrance gate to appellant=s property when they arrived there to serve the warrant.  Appellant stopped when the officers
identified themselves; they told him they had a search warrant for the
property.  The warrant authorizes law
enforcement to enter the Asuspected
place and premises@ and search
for the property described in the affidavit; it also authorizes law enforcement
to arrest any person described and accused in the affidavit.  The affidavit describes the premises to be
searched as follows:

a
wood framed two story brick home located on Hundley Road in Montague County,
Texas. . . .  Scope of search to
include any out buildings and all property.

 

. . . .

 

Said
suspected place and premises, in addition to the foregoing description, also
includes all other buildings, structures, places, vehicles on said premises
and within the curtilage . . . that are found to be under control of the
suspected party named below [appellant] and in, on, or around which said
suspected party may reasonably reposit or secrete property that is the object
of the search requested herein. 
[Emphasis added.]

It also accuses appellant of being in possession
of marijuana and asks for the issuance of a warrant for appellant=s arrest.  Thus, the warrant
authorized the search of not only the property but also the arrest of appellant
and the search of appellant=s vehicle.  Officers Dilbeck and
Spragins did not articulate any independent reason for searching appellant=s truck.













Because the allowable unit of
prosecution in this case is the methamphetamine, and because appellant=s possession of all of the methamphetamine was in the course of the
same transaction and seized by the officers within the context of serving the
search and arrest warrant as to appellant and all of his similarly-located
property, we conclude and hold that appellant=s possession of the methamphetamine in the truck and in the house were
not separate offenses.  See Sikes v.
State, 169 Tex. Crim. 443, 334 S.W.2d 440, 441-42 (1960) (holding that
possession of three marijuana cigarettes in car and three in apartment constituted
one continuous transaction, not two separate offenses, when, based on tip,
officers pulled over car and found marijuana, then, when appellant indicated he
had more marijuana, followed appellant to his apartment A15 or 20 blocks away@); Glaze v. State, 165 Tex. Crim. 626, 310 S.W.2d 88, 89-90
(1958) (holding that possession of marijuana in apartment and in car
constituted one offense when officers served search warrant for car and
appellant admitted to possessing marijuana in apartment); Hill, 48
S.W.3d at 286-87 (holding that driver=s possession of cocaine residue in shirt pocket and possession of
three rocks behind passenger seat constituted one possession offense and driver
could not be prosecuted twice for such possession); see also Powell v. State,
502 S.W.2d 705, 709 (Tex. Crim. App. 1973) (citing Sikes and Glaze
in concluding that possession of marijuana in two different locations constituted
continuous transaction and not separate offense).  Thus, subjecting appellant to two sentences
for the single offense of possession of methamphetamine violates the Fifth
Amendment double jeopardy prohibitions in this instance.  See Cavazos, 203 S.W.3d at 337.  We sustain appellant=s fourth point.

 

 

Conclusion

Having overruled appellant=s first three points, we affirm the trial court=s judgment as to appellant=s convictions and sentences for possession of four hundred grams or
more of methamphetamine and possession or transportation of anhydrous ammonia
with the intent to manufacture methamphetamine. 
But having sustained appellant=s fourth point, we reverse appellant=s conviction for possession of methamphetamine of at least four but
less than two hundred grams and render a judgment of acquittal as to that
offense only.[10]  See Rangel 








v. State, 179 S.W.3d 64, 75 (Tex. App.CSan Antonio 2005, pet. ref=d).

TERRIE LIVINGSTON

JUSTICE

 

PANEL B:   LIVINGSTON, WALKER, and MCCOY, JJ.

 

PUBLISH

 

DELIVERED:
February 21, 2008











[1]Officers
Spragins and Dilbeck were both Wichita Falls police officers assigned to the
North Texas Regional Drug Enforcement Task Force.  





[2]Officer
Dilbeck had verified that the property was appellant=s
beforehand by looking at deed records and then driving by the house so that he
could recognize it from the air.  





[3]Officer
Dilbeck described it as a Abeaten path.@ 





[4]Included
within appellant=s
complaint is the contention that all items found in his truck should have been
suppressed because A[n]o
contraband was immediately apparent upon looking before the closed containers
were opened and contraband was found.@  





[5]There
was no irrigation system near the plants. 





[6]The
search warrant applied to appellant=s property, as well as any
structures or vehicles found on the property. 
See discussion, supra, at pages 18-19. 





[7]Ringgold
is located in Montague County.  See
Tex. State Historical Ass=n, Ringgold,
Tex., Handbook of Tex.
Online, http://www.tshaonline.org/

handbook/online/articles/RR/hlr21.html
(last visited Feb. 19, 2008).





[8]Terral
is located in Oklahoma, close to Montague County, Texas.  See Ex parte Sutton, 455 S.W.2d 274,
276 (Tex. Crim. App. 1970).





[9]He
said he lives with friends in Ringgold.





[10]When
an appellant is convicted of two offenses that are the same for double jeopardy
purposes, we retain the conviction for the most serious offense, which is the
offense of conviction for which the greatest sentence was assessed.  Id. at 337-38.  Here, that is the sentence of twenty years=
confinement for possession of four hundred or more grams of
methamphetamine.  See Tex. Health & Safety Code Ann. '' 481.115(d)
(providing that possession of Penalty 1 controlled substance with weight of
four grams or more but less than two hundred grams is punishable as second
degree felony), 481.115(f) (providing that possession of Penalty 1 controlled
substance with a weight of four hundred or more grams is punishable by
confinement for Alife
or for a term or for a term of not more than 99 years or less than 10 years,
and a fine not to exceed $100,000@).  Moreover, if the State had originally charged
both offenses as one, the proper offense, based on weight, would have been
possession of four hundred or more grams.