**Opinion filed August 9, 2012**



**In The**

# Eleventh Court of Appeals

_____

## No. 11-10-00158-CR

_____

## STATE OF TEXAS, Appellant

## V.

## CHRIS LOLLAR, Appellee

**On Appeal from the 259th District Court**

**Jones County, Texas**

**Trial Court No. CR024118**

### M E M O R A N D U M   O P I N I O N

Chris Lollar was charged by information with driving while intoxicated on July 28, 2009. On May 5, 2010, the trial court held a hearing on Appellee's motion to suppress all evidence acquired pursuant to the blood-draw search warrant. The trial court took the motion under advisement and, on May 27, 2010, granted the motion to suppress. The State appeals the granting of the motion to suppress. This court abated the appeal to allow the trial court to file findings of fact and conclusions of law, per the State's timely request. The trial court entered its findings of fact and conclusions of law on March 9, 2012. We affirm.

*Background Facts*

On March 29, 2009, Officer Misti Watkins, of the Anson Police Department, received a call regarding a one-vehicle rollover in Anson, Jones County, Texas. When Officer Watkins arrived at the scene, she found an upside-down black SUV. Appellee was still inside the vehicle, but was attempting to crawl out of the passenger window. Richard Lollar was standing next to the vehicle. Officer Watkins helped Appellee out of the passenger side of the upside-down vehicle. Appellee told Officer Watkins that she took the turn too fast and lost control. Officer Watkins testified that Appellee smelled of alcohol and exhibited slowed, slurred speech. Officer Watkins also noticed that Appellee had bloodshot, "glassed[-]over" eyes and poor balance. There was half of a 30-pack of beer in the car; some of the cans were damaged during the accident and were leaking their contents into the vehicle.

Shortly after Officer Watkins arrived at the scene, EMS arrived and took Appellee to Anson General Hospital. After medical personnel at Anson General examined Appellee, she was taken by helicopter to Lubbock for treatment of a closed-head injury. Officer Watkins remained on the scene to continue her investigation. Officer Watkins filled out a search warrant affidavit form and presented it to a magistrate who issued a search warrant for a sample of Appellee's blood. Before Appellee was taken to Lubbock for treatment of her closed-head injury, Officer Watkins went to Anson General and presented the warrant to the hospital staff. A sample of Appellee's blood was drawn by a hospital technician. Several months later, on July 27, 2009, the State filed an information charging Appellee with the offense of DWI.

Appellee filed a *Franks v. Delaware* motion to suppress all evidence derived from the issuance of the warrant. *See Franks v. Delaware*, 438 U.S. 154 (1978). In the motion to suppress, Appellee alleged that the affidavit that was presented to the magistrate contained deliberate falsehoods or reckless disregard for the truth. Appellee attached a supporting affidavit in which she contradicted Officer Watkins's affidavit and asserted that, contrary to the statements made in Officer Watkins's affidavit, she was never asked to perform field sobriety tests. On May 5, 2010, a *Franks* hearing was held on Appellee's motion to suppress. Officer Watkins was the sole witness at the hearing. She testified about the stop and about her preparation of the affidavit in support of the search warrant.

At the hearing, Officer Watkins's testimony contradicted additional facts listed in the affidavit. We list here the discrepancies that the trial court specifically cited in its findings of

fact. The affidavit submitted to the magistrate in support of the warrant states that Appellee was asked at the scene to provide a specimen of her breath so that it could be analyzed to determine if she was under the influence of alcohol after the traffic stop. Officer Watkins admitted at the hearing that this did not happen. Officer Watkins stated in the affidavit that Appellee "admitted to me that [she] had been operating a motor vehicle in a public place in Jones County, Texas[,] just 7 minutes prior to my arrival" at the scene. Officer Watkins contradicted this at the hearing by saying that she merely inferred that Appellee had been the one operating the vehicle because Appellee stated, "I was driving down the road. My husband and I were arguing. I took the turn too fast and lost control." The seven-minute time frame was Officer Watkins's estimate, not Appellee's direct admission as is suggested by the wording of the affidavit. In paragraph seven of the supporting affidavit, Officer Watkins said that she performed field sobriety tests on Appellee. Appellee submitted an affidavit in which she denied that Officer Watkins requested her to perform field sobriety tests and denied that she performed such tests. Officer Watkins admitted during the *Franks* hearing that she did not actually perform any field sobriety tests. Officer Watkins said, in paragraph nine of the search warrant affidavit, that she requested a sample of Appellee's breath and/or blood and that Appellee refused. At the hearing, Officer Watkins admitted that she never asked Appellee for a sample of breath or blood.

The trial court also found that Officer Watkins omitted some key facts from the affidavit that might have weighed against the magistrate's granting of the search warrant. She did not mention in the affidavit that Appellee had to be removed from her vehicle, which was upside down, or that Appellee's husband, Richard, was also in the vehicle with her. Officer Watkins also failed to include information that Appellee may have suffered a serious head injury or other trauma; she had to be taken by ambulance from the scene due to her injuries. She also did not mention that, in the vehicle, there were cans of beer that had been crushed during the accident; these could have been the source of the odor of alcohol at the scene and on Appellee's person. At the hearing, Officer Watkins conceded that Appellee's behavior at the scene could have been the result of her injuries, as opposed to intoxication, and that the odor could have come from the crushed cans of beer.

Based on the foregoing discrepancies, on Officer Watkins's failure to correct known falsehoods in the affidavit, and on her demeanor during her testimony, the trial court found that Officer Watkins was not a credible witness. The trial court found Officer Watkins's testimony

3

about Appellee's strong odor of alcohol and bloodshot eyes was not credible. Further, the trial court found that the "allegation in the search warrant affidavit that Defendant Lollar's lack of balance, slurred speech, and bloodshot eyes were caused by intoxication and not by the shock and trauma she sustained in the vehicle accident were demonstrated to be false by Officer Watkins' trial testimony." The trial court found that the smell of alcohol likely emanated from the six to seven leaking cans of beer, rather than Appellee. Finally, the trial court found that Officer Watkins's failure to correct the falsehoods in her affidavit was deliberate and intentional, or at least done with a reckless disregard for the truth rather than mere negligence. The trial court granted Appellee's motion to suppress.

*The Trial Court's Granting of the Motion to Suppress*

In its first issue, the State argues that the trial court abused its discretion when it granted Appellee's motion to suppress evidence acquired pursuant to the blood-draw search warrant. We review a trial court's decision on a *Franks* suppression issue under the same standard that we review a probable cause deficiency, a mixed standard of review: "We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor while we review *de novo* application-of-law-to-fact questions that do not turn upon credibility and demeanor." *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002); *Davis v. State*, 144 S.W.3d 192, 201 (Tex. App.—Fort Worth 2004, pet. ref'd). However, in a *Franks* hearing, the trial court may consider not only the probable cause affidavit but also the evidence offered by the party moving to suppress because this attack on the sufficiency of the affidavit arises from claims that it contains false statements. *Franks*, 438 U.S. at 155–56; *Cates v. State*, 120 S.W.3d 352, 355 n.3 (Tex. Crim. App. 2003); *Davis*, 144 S.W.3d at 201.

In *Franks*, the United States Supreme Court held that, if a defendant established by a preponderance of the evidence that a false statement made knowingly, intentionally, or with reckless disregard for the truth was included in a probable cause affidavit and if it was material to establish probable cause, the false material must be excised from the affidavit. *Franks*, 438 U.S. at 164–65; *Harris v. State*, 227 S.W.3d 83, 85 (Tex. Crim. App. 2007). If the remaining content of the affidavit does not then still establish sufficient probable cause, the search warrant must be voided, and the evidence resulting from that search excluded. *Franks*, 438 U.S. at 155–56; *Harris*, 227 S.W.3d at 85. A misstatement in an affidavit that is the result of simple

4

negligence or inadvertence, as opposed to reckless disregard for the truth, will not make the warrant invalid. *See Dancy v. State*, 728 S.W.2d 772, 783 (Tex. Crim. App. 1987). At a *Franks* hearing, the trial court is owed great deference as sole factfinder and judge of the witnesses' credibility. *Janecka v. State*, 937 S.W.2d 456, 462 (Tex. Crim. App. 1996).

The State attacks the trial court's initial decision to grant the *Franks* hearing at all. In order to be granted a *Franks* hearing, a defendant must (1) allege a deliberate falsehood or reckless disregard for the truth by the affiant, specifically pointing out the portion of the affidavit claimed to be false; (2) accompany these allegations with an offer of proof stating the supporting reasons; and (3) show that, when the portion of the affidavit alleged to be false is excised from the affidavit, the remaining content is insufficient to support issuance of the warrant. *Harris*, 227 S.W.3d at 85. Appellee alleged in her motion that Officer Watkins's affidavit contained deliberate or reckless falsehoods. Appellee made an offer of proof of those claims and attached an affidavit in support of her motion. Appellee not only asserted that field sobriety tests were neither requested nor performed, but she also attacked the remaining basis for establishing probable cause to issue a warrant. She alleged that there was no basis for "the opinion [that Appellee had operated a vehicle while intoxicated] enumerated in the affidavit" other than the physical description of Appellee that was provided by Officer Watkins that could be explained by other circumstances that were omitted from the affidavit. In her affidavit in support of the motion to suppress, Appellee only mentions the facts in paragraph seven of Officer Watkins's affidavit. However, the allegations in her written motion are no less relevant. "[N]othing in our law requires the defendant to include a sworn affidavit in making a preliminary showing under *Franks*." *Cates*, 120 S.W.3d at 356. The trial court did not err when it granted the hearing.

At the hearing, Officer Watkins confirmed that she did not perform any sobriety tests. She admitted that paragraph seven of the affidavit was untrue. Additional falsehoods and omissions came to light during the hearing. Officer Watkins's testimony went beyond negligence to a reckless disregard for the truth. Officer Watkins admitted that she had not read the affidavit before she signed it. She "didn't think to go back and read it and mark out stuff that did not apply." When asked whether this was an example of "good" or "bad" police work, she replied, "Well, it's not good or bad . . . just because I didn't mark it out doesn't mean it's bad police work." Form affidavits can be a valuable tool for law enforcement when time is of the essence; if abused, they also have the potential to infringe on Fourth Amendment rights. The

affiant must bear responsibility for the contents of a sworn affidavit presented to a magistrate for signature.

It is clear from the record, especially the findings of fact and conclusions of law, that, due to credibility issues, the trial court became concerned with the entire affidavit, not just those portions attacked by the motion to suppress. The trial court expressed in its findings that it was concerned with the credibility of the affiant based on her demeanor at the hearing and discrepancies in her testimony. In fact, the trial court's decision to grant the motion to suppress turned entirely on its assessment of the credibility of the affiant. We defer to the trial court as sole factfinder and judge of the witness's credibility. When the parts of the affidavit that the trial court found incredible were stripped away, there was nothing left in the affidavit to establish the probable cause necessary to issue a warrant for Appellee's blood. The State's first issue is overruled.

### Issues that Are Moot

In Issue Two, the State argues that a municipal court judge in Jones County is authorized to sign a search warrant for blood. This issue is moot because the trial court's findings of fact and conclusions of law reveal that its decision rested solely on the affiant's credibility and had nothing to do with the qualifications of the issuing magistrate. Likewise, we did not rely on the authority of the issuing magistrate in overruling the State's first issue. The State's second issue is overruled as moot.

In Issue Three, the State contends that the trial court erred when it failed to file written findings of fact and conclusions of law. After we abated the appeal, the trial court filed written findings of fact and conclusions of law regarding Appellee's motion to suppress. Issue Three is overruled as moot.

The judgment of the trial court is affirmed.

ERIC KALENAK

August 9, 2012                                                    JUSTICE

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.

6