

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| MICHAEL WAYNE GRIFFITH, | § | No. 08-13-00242-CR |
| Appellant, | § | Appeal from |
| v. | § | 297th District Court |
| THE STATE OF TEXAS, | § | of Tarrant County, Texas |
| Appellee. | § | (TC # 1223635D) |
| | § | |

## **O P I N I O N**

Michael Wayne Griffith appeals his conviction of aggravated assault with a deadly weapon. A jury found Appellant guilty and assessed his punishment at imprisonment for a term of twenty years. We affirm.

## **FACTUAL SUMMARY**

Darren Rhea owns an airplane hangar at Hicks Airfield in Tarrant County, Texas. Rhea used the hangar to store equipment and trailers. Appellant also owned and lived in a hangar at Hicks Airfield. Rhea hired Appellant to do routine maintenance on his pool. When Rhea began having trouble with the pool pump, he asked Appellant to fix it. Appellant worked on the pool pump, but he did not fix the problem, and Rhea had to hire someone else. According to Rhea, Appellant put used, rusty parts into the pool pump. Rhea did not want to pay Appellant the full amount for the repair job since he had not repaired the problem with the pool pump and it had

been necessary to hire someone else. He saw Appellant at the hangar and they had a conversation about the situation and what Rhea owed him. Rhea told Appellant that he did not want to pay the full amount for the repairs. He described it as the "last normal conversation" he had with Appellant. Over the next several weeks, Appellant became increasingly angry and agitated. On two different occasions, Appellant sat in his truck outside of the hangar and repeatedly screamed "I want my money!" while honking the horn continuously for about twenty minutes. Appellant arrived at the hangar another day and came inside to yell and cuss at Rhea about the unpaid repair bill. Rhea suggested that they take the matter to JP Court to resolve it, but Appellant refused. Rhea asked Appellant to leave, but Rhea did not act aggressively towards him.

On November 26, 2010, Rhea went to the hangar with his ten-year-old son at about 5:30 p.m. to get a trailer to transport four-wheelers. As they were hooking up the trailer, Rhea saw Appellant sitting in his truck with the headlights turned off. After a couple of minutes, Rhea saw the truck's headlights illuminate and the truck moved towards his hangar. Appellant pulled the truck up to the hangar so that the front of the truck was in the doorway, and he immediately started yelling and cussing at Rhea. Appellant was extremely agitated, red-faced, and disheveled. Rhea sensed that this was not going to be a short visit by Appellant, so he sent his son upstairs to get a soft drink. Rhea told Appellant to stop cussing in front of his son and to get out of the truck if he wanted to talk. Rhea had started walking towards the truck when he noticed that Appellant looked different than he had seen him before and he appeared to be in a rage. Just as Rhea noticed the barrel of a gun pointing out of the truck window, his body was suddenly

- 2 -

spun around so that he was facing the hangar. After a couple of seconds, Rhea realized Appellant had shot him in the abdomen, and he turned back around and said to Appellant, "You shot me." Fearing for his son, Rhea watched Appellant to see what he was going to do. When Appellant backed up the truck and drove slowly away, Rhea and his son got into their truck. Rhea called 911 as he drove towards the front gate of the airfield. Emergency responders met Rhea at the gate and transported him to a hospital where he underwent surgery to remove a portion of his large intestine damaged by the bullet.

Law enforcement officers were in the process of securing the crime scene at Rhea's hangar when Appellant called 911. Appellant told the 911 operator he was at his hangar and indicated that he would come outside unarmed. When officers arrived at that location, Appellant came out of the hangar with his hands up, but he refused to consent to a search of the hangar or his vehicle. The Tarrant County Sheriff's Department obtained a search warrant for Appellant's hangar and truck. Deputies conducted a search and found a .22 caliber revolver in the cup-holder of Appellant's vehicle.

## NEW TRIAL PROCEDURE

In his first three issues, Appellant contends that he did not have a meaningful opportunity to present a claim alleging ineffective assistance of trial counsel because of the restrictive filing deadlines for filing a motion for new trial. Appellant argues that this resulted in a violation of his rights to due process and to the effective assistance of counsel on appeal under both the United States and Texas Constitutions. He further asserts that we should abate the appeal for an out-of-time new trial hearing.

## *State Constitutional Claims*

An appellant is required to raise state and federal constitutional claims as separate grounds with separate substantive analysis or argument provided for each ground. *See Berry v. State*, 233 S.W.3d 847, 855 n.3 (Tex.Crim.App. 2007); *Muniz v. State*, 851 S.W.2d 238, 251-52 (Tex.Crim.App. 1993); *Heitman v. State*, 815 S.W.2d 681, 690-91 n.23 (Tex.Crim.App. 1991). Further, the appellant must show how the protection provided by the Texas Constitution exceeds or differs from that provided to him by the federal constitution. *Arnold v. State*, 873 S.W.2d 27, 33 (Tex.Crim.App. 1993). Appellant does not argue that the Texas Constitution provides different or greater protection than the United States Constitution. Consequently, we will restrict our analysis of his claims to the applicable federal constitutional provisions. *See Flores v. State*, 319 S.W.3d 697, 702 n.8 (Tex.Crim.App. 2010); *Muniz*, 851 S.W.2d at 251-52.

## *Federal Constitutional Claims*

Appellant was represented at trial by Steven King and Eric Hudak. The trial court sentenced Appellant in open court on July 26, 2013. Consequently, the deadline for filing a motion for new trial or amended motion for new trial was August 25, 2013. *See* TEX.R.APP.P. 21.4(a). On the same date he was sentenced, Appellant filed a *pro se* notice of appeal and request for a free record, and the trial court signed an order providing Appellant with a free record and appointing Richard Henderson to represent him on appeal. On August 13, 2013, Henderson filed a timely motion for new trial asserting that Appellant's sentence was excessive and constituted cruel and unusual punishment. Two days later, Larry M. Moore filed a motion to substitute as appellate counsel in place of Henderson, and the court granted that motion on

- 4 -

August 16, 2013. The trial court did not rule on the motion for new trial and it was overruled by operation of law. *See* TEX.R.APP.P. 21.8(c).

Moore filed a motion on April 9, 2014 requesting that we abate the appeal to allow him to investigate and file an out-of-time motion for new trial related to ineffective assistance of trial counsel. He asserted that neither he nor prior appellate counsel had the ability to raise a claim of ineffective assistance in the motion for new trial because the reporter's record was not available until after the expiration of the deadline for filing the motion. Even though counsel had access to the appellate record for three months at the time he filed the motion to abate, the motion did not specify any grounds he intended to raise in an out-of-time motion for new trial. We denied the motion to abate without written order.

### *Applicable Law*

In Issues One through Three, Appellant has renewed his request for abatement of the appeal and he argues that Rule 21 of the Texas Rules of Appellate Procedure operated to deprive him of his right to due process and effective assistance of counsel on appeal under both the state and federal constitutions. Rule 21 governs new trials in criminal cases. *See* TEX.R.APP.P. 21. A motion for new trial is a prerequisite to presenting a point of error or issue on appeal when it is necessary to adduce facts not in the record. TEX.R.APP.P. 21.2. The deadline for filing a motion or amended motion for new trial is thirty days after the date the court imposes or suspends sentence in open court. TEX.R.APP.P. 21.4(a), (b). A trial court does not have jurisdiction to consider a motion for new trial filed after the deadline. *See State v. Dunbar*, 297 S.W.3d 777, 780 (Tex.Crim.App. 2009).

Appointment of counsel for an indigent defendant is required for the first appeal as of right. *Cooks v. State*, 240 S.W.3d 906, 910 (Tex.Crim.App. 2007), *citing Douglas v. California*, 372 U.S. 353, 357, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). The Court of Criminal Appeals has held that, as a matter of federal constitutional law, the period for filing a motion for new trial is a critical stage of the proceedings and a defendant has a constitutional right to counsel during that period. *Cooks*, 240 S.W.3d at 911. When a defendant is deprived of the effective assistance of counsel during this critical stage, the remedy is to reset the appellate deadlines and abate the appeal. *See Ward v. State*, 740 S.W.2d 794, 800 (Tex.Crim.App. 1987).

### *Trevino v. Thaler*

Appellant relies on the Supreme Court's decision in *Trevino v. Thaler*, --- U.S. ---, 133 S.Ct. 1911, 185 L.Ed.2d 1044 (2013) to support his argument that he has been deprived of the effective assistance of appellate counsel because counsel did not have access to the reporter's record until after the deadline for filing a motion for new trial. The issue in *Trevino* was whether the failure of Trevino's habeas counsel to raise a particular ineffective assistance of trial counsel claim in a prior habeas proceeding precluded him from seeking federal habeas relief or whether the exception to the procedural default rule announced in *Martinez v. Ryan*, 566 U.S. 1, 132 S.Ct. 1309, 1318, 182 L.Ed.2d 272 (2012) applied to excuse the procedural default. *See Trevino*, 133 S.Ct. at 1916-17.

A federal habeas court generally cannot consider a defendant's federal constitutional claim when the defendant's conviction rests upon procedural default under state law, such as the defendant's failure to raise a claim of error at the time or in the place that state law requires.

- 6 -

*Trevino*, 133 S.Ct. at 1917. Under the *Martinez* rule, a prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. *Id.* Cause is shown where (1) the claim of ineffective assistance of trial counsel was a substantial claim; (2) the cause consisted of there being no counsel or only ineffective counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the initial review proceeding in respect to the ineffective-assistance-of-trial-counsel claim; and (4) state law requires that an ineffective assistance of trial counsel claim be raised in an initial-review collateral proceeding. *Id.*; *Martinez*, 132 S.Ct. at 1318-19, 1320-21.

Focusing on the fourth part of the test for finding cause, the Supreme Court noted that Texas procedure makes it virtually impossible for appellate counsel to adequately present an ineffective assistance of trial counsel claim on direct appeal because the appellate record will often fail to contain the information necessary to substantiate the claim. *Trevino*, 133 S.Ct. at 1918. While an ineffective assistance claim can be made in a motion for new trial, this vehicle is often inadequate because of time constraints and the trial record generally has not been transcribed at this point. *Id.* Citing decisions of the Court of Criminal Appeals, the opinion goes on to note that a writ of habeas corpus issued in state collateral proceedings is essential to gathering the facts necessary to evaluate ineffective assistance of counsel claims. *Id.*, 133 S.Ct. at 1918-19. Given this framework, the Supreme Court concluded that the *Martinez* rule must apply because Texas effectively requires that an ineffective assistance of trial counsel claim be raised, not on direct appeal, but in the initial collateral review proceeding. *Id.*, 133 S.Ct. at 1921. The opinion does not hold, as Appellant suggests, that Texas' procedural framework for filing a

- 7 -

motion for new trial operates to deprive a defendant of due process or the effective assistance of appellate counsel.

### *General Attack on New Trial Framework*

Appellant makes a general attack on the procedural framework for filing a motion for new trial in criminal cases, and he argues that a substantially longer time-period, such as ninety days, must be provided in order to ensure that a defendant has the ability to raise an ineffective assistance of counsel claim on direct appeal. The authority to change Rule 21 to expand the time for investigating and filing a motion for new trial properly belongs to the Court of Criminal Appeals. *See* Acts 1985, 69th Leg., ch. 685, p. 2472, § 1, eff. Aug. 26, 1985 (granting the Texas Court of Criminal Appeals rule-making authority in matters of procedure in post-trial, appellate, and discretionary review of criminal cases, "except that its rules may not abridge, enlarge, or modify the substantive right of a litigant"); *see also State v. Moore*, 225 S.W.3d 556, 565-66 (Tex.Crim.App. 2007)(discussing the history of the procedural rules for motions for new trial). As an intermediate appellate court, our ability to grant relief is dependent on whether Appellant has established that he was deprived of the effective assistance of appellate counsel.

### *Failure to Establish Ineffective Assistance of Appellate Counsel*

This is not a case where Appellant was unrepresented by counsel during a portion of the time period for filing a motion for new trial. Appellant was initially represented by appointed counsel from July 26, 2013 through August 16, 2013, and retained counsel's motion to substitute was granted on August 16, 2013. Other than broadly asserting that he did not have sufficient time to file a motion for new trial alleging ineffective assistance of trial counsel in the time

period provided by Rule 21, Appellant has not shown either in his motion to abate or his brief that this constitutes a deprivation of the right to effective assistance of counsel on appeal. We decline to hold that Rule 21 operates in every case to deprive a defendant of the right to effective assistance of counsel on appeal.

Even if we assume for the sake of argument that appellate counsel did not have sufficient time to investigate and file an amended motion for new trial raising ineffective assistance of trial counsel, Appellant still must show he was harmed or prejudiced to be entitled to relief. *See Cooks*, 240 S.W.3d at 911. This showing is made if the appellant demonstrates that he had facially plausible claims that could have been presented in a motion for new trial.

Appellant's motion to abate, filed on April 9, 2014, almost eight months after appellate counsel began representing Appellant, included only a general allegation that there are "certain issues which require investigation and development" through a motion for new trial. This conclusory statement falls far short of the showing that must be made in a motion to abate.

In his brief filed on April 22, 2014, Appellant broadly asserts that a number of potential issues "appear to exist" and warrant further investigation, including: "the failure to conduct necessary investigation and to interview witnesses; the failure to file discovery motions; the failure to adequately review medical records; the failure to adequately prepare; the failure to object to the introduction of extraneous offenses/bad acts; the failure to object to speculative testimony from unproved, unqualified witnesses; the failure to test witnesses regarding their purported expertise, and/or the scientific basis for their 'expert' testimony, the failure to consult with and/or obtain expert assistance for purposes of trial; the failure to adequately present

evidence to support the motion to suppress; the failure to object to improper voir dire by the State; and the failure to object to improper closing arguments by the State." All of these allegations are conclusory and Appellant makes no effort to show that any of the allegations are at least facially plausible. Consequently, Appellant has failed to show that he was harmed or prejudiced by the operation of Rule 21.4. *See Cooks*, 240 S.W.3d at 911-12 (denial of counsel during portion of time for filing motion for new trial did not harm or prejudice the appellant where the motion to abate presented only a conclusory allegation and did not establish a facially plausible claim of ineffective assistance). Issues One through Three are overruled.

## SEARCH WARRANT AFFIDAVIT

In Issue Four, Appellant contends that the trial court erred by denying his motion to suppress evidence obtained through a search warrant because the affidavit prepared by Investigator Dana Quintana of the Tarrant County Sheriff's Department contained a false statement.

### *Standard of Review and Applicable Law*

The United States Supreme Court held in *Franks v. Delaware* that if a defendant establishes by a preponderance of the evidence that the probable cause affidavit includes a false statement that was made knowingly, intentionally, or with reckless disregard for the truth, and the false statement is necessary to establish probable cause, the search warrant is invalid under the Fourth Amendment. *Franks v. Delaware*, 438 U.S. 154, 155-56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978); *Thom v. State*, 437 S.W.3d 556, 563 (Tex.App.--Houston [14th Dist.] 2014, no pet.). A misstatement in an affidavit that is the result of simple negligence or inadvertence, as

opposed to reckless disregard for the truth, will not invalidate the warrant. *Dancy v. State*, 728 S.W.2d 772, 783 (Tex.Crim.App. 1987), *citing Franks*, 438 U.S. at 170, 98 S.Ct. at 2674. An affidavit supporting a search warrant begins with the presumption of validity. *Franks*, 438 U.S. at 171, 98 S.Ct. at 2684; *Cates v. State*, 120 S.W.3d 352, 355 (Tex.Crim.App. 2003). Consequently, the defendant has the burden to rebut that presumption by proving by a preponderance of the evidence that the affiant made the false statement deliberately or with a reckless disregard for the truth. *Franks*, 438 U.S. at 156, 171, 98 S.Ct. at 2676, 2684; *Davis v. State*, 144 S.W.3d 192, 201 (Tex.App.--Fort Worth 2004, pet. ref'd) (op. on reh'g). The defendant must also show that absent the false information, the remaining content is insufficient for probable cause. *Franks*, 438 U.S. at 156, 171-72, 98 S.Ct. at 2676, 2684-85; *Davis*, 144 S.W.3d at 201.

When a defendant challenges the warrant affidavit on the ground that it contains known falsehoods, the trial court is not limited to the four corners of the affidavit. *Cates*, 120 S.W.3d at 355 n.3. If the defendant makes the requisite preliminary showing of deliberate falsity, the trial court must go behind the four corners of the affidavit. *Id*. The trial court at a suppression hearing, including one involving a *Franks* claim, is the sole trier of fact and the judge of the credibility of the witnesses and the weight to be given the evidence. *Hinojosa v. State*, 4 S.W.3d 240, 247 (Tex.Crim.App. 1999); *Janecka v. State*, 937 S.W.2d 456, 462 (Tex.Crim.App. 1996). Accordingly, we will utilize the bifurcated standard of review applicable to most suppression issues. *Jones v. State*, 338 S.W.3d 725, 739 (Tex.App.--Houston [1st Dist.] 2011), *affirmed*, 364 S.W.3d 854 (Tex.Crim.App. 2012); *Davis*, 144 S.W.3d at 201. Under that standard, we give

almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor while we review *de novo* application-of-law-to-fact questions that do not turn upon credibility and demeanor. *Johnson v. State*, 68 S.W.3d 644, 652-53 (Tex.Crim.App. 2002). The trial court made explicit findings of fact related to the motion to suppress. In such a case, the reviewing court must afford those findings almost total deference as long as they are supported by the record. *See State v. Castleberry*, 332 S.W.3d 460, 465 (Tex.Crim.App. 2011).

### *The Facts*

Detective Dana Quintana was the lead investigator in this case and she testified at the motion to suppress about her role in the preparation of the search warrant affidavit. After being contacted by her sergeant about the case, she went to the hospital but was unable to interview Rhea before he went into surgery. Quintana spoke with Rhea's wife and son at the hospital. Quintana left the hospital and began preparing the probable cause affidavit for the search warrant. She utilized information she had received from Rhea's wife and son and from two field officers, Lieutenant Gerald Quiat and Deputy Mike Kline. The probable cause affidavit states:

> On or about November 26, 2010, at 925 Aviator Drive, in unincorporated Tarrant County, Texas, 76179, Tarrant County Sheriff Office received a 911 call from Darren Lee Rhea reporting that he had been shot by a subject known to him as 'Wayne' and the actor had fled the scene to hanger 916, which he is known to occupy residentially and professionally. Darren stated that Wayne shot him with an unknown make and model of handgun.
>
> Wayne, later identified as Michael Wayne Griffith, also called the Tarrant County Sheriff's Office and reported that Darren had punched him about the face pursuant to an argument over money allegedly owed him by Darren. Soon thereafter, Tarrant County Sheriff's Office Patrol Deputy Alessandra met with Michael at his hanger, 916 Aviator Drive, who was said to be on the phone with

his attorney. According to Tarrant County Sheriff's Patrol Lieutenant Quiat, Michael told Deputy Alessandra that Darren struck him and he feared that he would be further assaulted. **Deputy Alessandra observed no visible injury to Michael['s] face.** Michael told Deputy Alessandra that the gun was in his Chevy, but he would not give consent for said truck to be searched. Michael was arrested at his hanger, 916 Aviator Drive, and charged with Aggravated Assault Deadly Weapon and was transported to the Tarrant County Corrections Center. The handgun was not located on his person upon arrest and it is suspected to be located at 916 Aviator Drive.

Tarrant County Sheriff's Office Patrol Deputy Welborn arrived and found that Darren Lee Rhea had suffered a gunshot wound to the abdomen. He was transported to John Peter Smith Hospital and underwent emergency surgery. The affiant interviewed Darren's 11 year old son, [J.R.], who was present when Michael arrived demanding money from his father. [J.R.] said that as Michael's temper escalated, his father ordered him to go upstairs and upon reaching the top of said stairs, [J.R.] heard one gunshot and a vehicle speeding away. [J.R.] said that to his knowledge no one else was in Michael's truck when he arrived and Michael never left his Chevy truck during the verbal confrontation with his father. [Emphasis added].

Lieutenant Quiat told Quintana that Alessandra did not observe any injuries to Appellant's face, and she believed the statement to be true at the time she included it in the search warrant affidavit. She later discovered that Appellant had a visible injury to his face. Quintana testified that she did not intentionally, knowingly, or recklessly include the incorrect statement in the search warrant affidavit.

Deputy Alessandra testified at the suppression hearing. When Alessandra met Appellant at the scene, he saw that Appellant had a swollen lower lip and dried blood on his nose. Alessandra included his observations in his report. He spoke with Lieutenant Quiat at the scene, but could not remember the specifics of his conversation. According to Alessandra, Quiat could have seen the injuries if he got close enough to Appellant, but he did not know whether Quiat actually saw them. Alessandra did not believe that Quiat would have intentionally

miscommunicated the information about the facial injuries. The trial court denied the motion to suppress and entered written findings of fact.

The trial court found that Quintana received information from Lieutenant Quiat and Deputy Kline and she knew both of them to be credible. Quintana used this information to draft the search warrant affidavit. To Detective Quintana's knowledge, the information she received from Quiat was true and correct. At the time Quintana drafted the affidavit, she could not have known that Alessandra had observed injuries to Appellant's face. The court concluded that the statement regarding a lack of injuries on Appellant's face was false, but there was no evidence that Quintana included the statement intentionally, knowingly, or with reckless disregard to whether the information was false. Further, the court determined that even if the statement is excised from the affidavit, the remaining information is sufficient to establish probable cause to search the premises.

### *Analysis*

The trial court's fact findings are supported by the record. Consequently, we are required to show them almost total deference. Those findings reflect that while the statement in the affidavit is false, there is no evidence that Detective Quintana made it intentionally, knowingly, or with reckless disregard for the truth. A *Franks* violation does not occur where there is an innocent mistake or even negligence. *See Franks*, 438 U.S. at 171, 98 S.Ct. at 2684; *Dancy*, 728 S.W.2d at 783. The trial court did not abuse its discretion by denying the motion to suppress on this ground. Issue Four is overruled.

**PROBABLE CAUSE**

In Issue Five, Appellant complains that the trial court erred by denying his motion to suppress because the search warrant affidavit failed to establish probable cause to believe that evidence of a crime would be located within the hangar.

*Standard of Review*

When reviewing a trial court's ruling on a motion to suppress, we generally utilize a bifurcated standard which requires us to give almost total deference to the trial court's findings of historical fact and review conclusions of law *de novo*. *State v. McLain*, 337 S.W.3d 268, 271 (Tex.Crim.App. 2011). A different standard is required when the case involves a motion to suppress evidence seized pursuant to a search warrant. *See id*. In that situation, a trial court is limited to the four corners of the affidavit supporting the warrant; consequently, the court makes no factual or credibility determinations. *Id*. Accordingly, when reviewing the magistrate's decision to issue a warrant, we apply a highly deferential standard. *Id*. We will uphold the magistrate's probable cause determination as long as the magistrate had a substantial basis for concluding that probable cause existed. *Id*.; *Robinson v. State*, 368 S.W.3d 588, 598 (Tex.App.--Austin 2012, pet. ref'd). This standard is consistent with the constitutional preference that searches be conducted pursuant to a warrant. *McLain*, 337 S.W.3d at 271; *Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex.Crim.App. 2007).

Probable cause for a search warrant exists if, under the totality of the circumstances presented to the magistrate, there is at least a "fair probability" or "substantial chance" that contraband or evidence of a crime will be found at the specified location. *Flores v. State*, 319

- 15 -

S.W.3d 697, 702 (Tex.Crim.App. 2010), *citing Illinois v. Gates*, 462 U.S. 213, 238, 243 n.13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Probable cause for a search warrant does not require that, more likely than not, the item or items in question will be found at the specified location. *Flores*, 319 S.W.3d at 702, *citing Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). We are instructed to avoid interpreting the affidavit in a hyper-technical manner. *McLain*, 337 S.W.3d at 271. Further, we must defer to all reasonable inferences that the magistrate could have made. *Rodriguez*, 232 S.W.3d at 61; *Robinson*, 368 S.W.3d at 598.

### *Review of the Probable Cause Affidavit*

The probable cause affidavit showed that Rhea called 911 and reported he had been shot by someone known to him as "Wayne". Rhea said that "Wayne" had fled to his hangar where he lived and he gave the dispatcher "Wayne's" address. Rhea suffered a gunshot wound to his abdomen and had been transported to the hospital. Rhea's eleven-year-old son told Detective Quintana that he was present when Appellant arrived at the hangar and demanded money. When Appellant became extremely angry, Rhea sent J.R. upstairs and he soon heard a single gunshot and the sound of a vehicle speeding away. The search warrant affidavit also reflects that Appellant called the Sheriff's Department shortly after the shooting and reported that he had shot Rhea after Rhea punched him in an argument over money. Appellant told the dispatcher that the gun was in his Chevy. Appellant exited the hangar after the officers arrived, but he did not have the weapon on his person. Appellant initially consented to a search of the hangar and his vehicle, but he had since refused.

- 16 -

Appellant contends that probable cause to search does not exist for any location other than his vehicle. We disagree. The search warrant affidavit certainly sets forth facts from which the magistrate could have reasonably inferred that the gun might be in Appellant's vehicle as he stated to the police, but the facts do not indicate that the vehicle is the only possible location of the gun. Given that the affidavit reflects that Appellant went to his hangar immediately after the shooting and he exited his hangar unarmed when police arrived, the magistrate could have also concluded there is a fair probability or substantial chance that Appellant had moved the gun from his vehicle to the hangar. We conclude, based on the totality of the circumstances reflected in the affidavit, that the magistrate had a substantial basis to conclude that there was a "fair probability" or "substantial chance" that the gun Appellant used to shoot Rhea would likely be found in Appellant's hangar or truck. *See McLain*, 337 S.W.3d at 271; *Flores*, 319 S.W.3d at 702. Issue Five is overruled. Having overruled each issue, we affirm the judgment of the trial court.

April 22, 2016

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)